[No. 54424–7. En Banc. January 6, 1989.]

THE STATE OF WASHINGTON, *Petitioner,* v. CHARLES
RAY LIDGE, ET AL, *Defendants,* DEVON
ANTONIO ESKRIDGE, *Respondent.*

*Norm Maleng, Prosecuting Attorney, Deborah J. Phillips, Senior Appellate Attorney,* and *Sally F. Stanfield, Deputy,* for petitioner.

*John Christiansen* of *Washington Appellate Defender Association,* for respondent.

DURHAM, J.—Devon Eskridge was convicted in King County Superior Court of second degree burglary and third degree possession of stolen property. On appeal, he argues that his due process rights were violated when the State's delay in charging him as a juvenile caused him to be tried as an adult. The Court of Appeals agreed with Eskridge's argument, reversed his convictions, and dismissed the case. We reverse the Court of Appeals and reinstate the convictions.

On May 10, 1985, Eskridge, then 17 years old, and two adults entered Alston's Hallmark Shop in Redmond, Washington. The three acted suspiciously so a store clerk called Redmond police. After the three left the shop, another clerk found that a locked desk drawer containing the day's receipts had been pried open. The police arrived, investigated the scene, and took a vehicle description. Later, police stopped a vehicle matching that description. Eskridge and the two adults in the vehicle were arrested. The police, with permission, searched the vehicle and found money, including rolls of coins. Some of the rolls had "Alston's" printed on them. Money also was found in Eskridge's right stocking.

The adults were held in custody and charged with second degree burglary on May 13, 1985. Because Eskridge was a juvenile, he was placed in the custody of juvenile detention and the information concerning his arrest was transferred to the King County Prosecutor's Juvenile Division. On May 13, the deputy prosecutor reviewing the case determined that the charge against Eskridge was insufficient and

requested more information from the Redmond Police Department. After being held for 72 hours, Eskridge was released from detention without being charged.

The additional information was received on May 20. The following day, the prosecutor concluded that sufficient information then existed to charge Eskridge. At that point, however, the State did not have adequate time under its normal procedures to bring charges against Eskridge and have him arraigned in juvenile court. Only 13 days remained before Eskridge's birthday and those procedures generally require 3 weeks.[1] Accordingly, the case was referred to the adult division for prosecution. On June 28, Eskridge was charged as an adult and was added as a codefendant in the case against his companions.

Eskridge brought a pretrial motion to dismiss for prosecutorial delay. He argued that the delay in charging him was not justified and prejudiced him because he lost any opportunity to be tried as a juvenile rather than as an adult. At a pretrial hearing, the State explained the delay through the testimony of Linda Walton, assistant chief deputy prosecuting attorney in charge of the Juvenile Division of the King County Prosecutor's office. Walton testified as to the facts stated above. The defense cross-examined her about special procedures under which the prosecutor's staff could have "rush filed" Eskridge's case. Walton acknowledged the existence of "rush file" procedures but stated that those procedures generally are used only in cases involving serious crimes where the defendant should not be released. Because the prosecutor's resources are limited, Walton stated, "rush file" procedures are not

---

[1] It usually takes 1 week for the juvenile court staff to get charges filed and another 2 weeks to bring in the juvenile for arraignment. Juvenile court jurisdiction attaches only until the juvenile is 18, although before the juvenile reaches that age, the court may extend jurisdiction until the age of 21. RCW 13.40-.300(1)(a). This extension can be granted at arraignment. Thus, under normal procedures, juvenile court jurisdiction is lost unless the defendant is arraigned before he turns 18.

employed in cases such as Eskridge's. At no point did Eskridge attempt to refute Walton's assertions that normal procedures were followed in handling his case.

The trial court denied Eskridge's motion to dismiss, finding that "the State's conduct was neither deliberate nor negligent in failing to file charges", and that the State followed its normal procedures in charging Eskridge. A jury convicted Eskridge of second degree burglary and third degree possession of stolen property.

Eskridge and one of his codefendants, Charles Ray Lidge, appealed their convictions. The Court of Appeals affirmed Lidge's convictions but reversed Eskridge's convictions due to prosecutorial delay. *State v. Lidge,* 49 Wn. App. 311, 742 P.2d 741 (1987). The State petitioned for review of Eskridge's prosecutorial delay issue, and this court granted review.

We have stated that "[a] deliberate delay to circumvent the juvenile justice system violates due process; a negligent delay may also." *State v. Alvin,* 109 Wn.2d 602, 604, 746 P.2d 807 (1987). In analyzing whether due process has been violated, courts "must consider the reasons for the delay as well as the prejudice to the accused." *United States v. Lovasco,* 431 U.S. 783, 790, 52 L. Ed. 2d 752, 97 S. Ct. 2044 (1977). A decision "to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." *Lovasco,* at 796. This court has developed from *Lovasco* a 3-stage analysis:

> (1) The defendant must show he was prejudiced by the delay; (2) the court must consider the reasons for the delay; and (3) if the State is able to justify the delay, the court must undertake a further balancing of the State's interest and the prejudice to the accused.

*Alvin,* at 604 (citing *State v. Calderon,* 102 Wn.2d 348, 352–53, 684 P.2d 1293 (1984)).

As to the first element, the defendant is presumed to have met his burden of proof by showing that a charging

delay prevented juvenile court from exercising its jurisdiction. *Alvin,* at 604; *Calderon,* at 353. Here, but for the 8–day investigative delay, the State would have had sufficient time to invoke the jurisdiction of the juvenile court. Thus, we turn to the State's explanation for the delay.

At the Superior Court hearing, the State presented its reasons for the delay, as related above. Eskridge argued that the prosecutor's office should have used expedited procedures in order to ensure jurisdiction by the juvenile court. The trial court rejected this argument and found that no due process violation had occurred. This decision is fully supported by this state's case law. We twice have stated that:

> Absent extraordinary circumstances, it is appropriate that juvenile offenses be managed in the same manner as are adult crimes. We are reluctant to interfere with standard investigatory procedures by requiring special treatment for juvenile suspects.

*Calderon,* at 354, *quoted in Alvin,* at 605. Accordingly, the State was justified in following normal prosecutorial procedures, having no obligation to "rush file" Eskridge's case merely because he was about to turn 18. *State v. Anderson,* 46 Wn. App. 565, 569–70, 731 P.2d 519 (1986), *review denied,* 108 Wn.2d 1005 (1987).

Apparently recognizing as much, Eskridge asserts on appeal a different basis for challenging the sufficiency of the State's investigative delay.[2] Eskridge now argues that the State could not have been following normal procedures in his case because the adults were charged based on the information originally available, but Eskridge was not. He concludes from this disparate treatment that the prosecutors deliberately delayed charging him so that he would be charged as an adult.

We find that no such inference is warranted. The prosecutor who delayed filing charges against Eskridge was not

---

[2]In doing so, Eskridge relies on facts not presented to the trial court. Even assuming consideration of these facts to be proper, they provide no basis for the inference of bad faith or neglect that Eskridge asks us to draw from them.

the same prosecutor who immediately filed charges against the adult defendants. As the Supreme Court has indicated, "[t]he determination of when the evidence available to the prosecution is sufficient to obtain a conviction is seldom clear–cut, and reasonable persons often will reach conflicting conclusions." *Lovasco,* at 793. The fact that one prosecutor decides to charge based on particular evidence hardly implies that another prosecutor would be acting improperly by seeking additional information. Indeed, such an implication would violate the broad discretion that has been granted to prosecutor's charging decisions. *See State v. Judge,* 100 Wn.2d 706, 713, 675 P.2d 219 (1984). As the Supreme Court has recognized, this principle is mandated by the limits on judicial decisionmaking:

> [T]he Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment. Judges are not free, in defining "due process," to impose on law enforcement officials our "personal and private notions" of fairness and to "disregard the limits that bind judges in their judicial function."

*Lovasco,* at 790 (quoting *Rochin v. California,* 342 U.S. 165, 170, 96 L. Ed. 183, 72 S. Ct. 205, 25 A.L.R.2d 1396 (1952)).

Allowing prosecutors broad discretion to delay the filing of charges until they are "completely satisfied that [they] should prosecute and will be able promptly to establish guilt beyond a reasonable doubt", *Lovasco,* at 795, serves important societal interests. Forcing prosecutors to proceed precipitously may waste scarce resources on cases in which the defendant's guilt cannot be established beyond a reasonable doubt. More devastating, however, is the risk that incomplete police investigation will result in charges being brought against innocent persons. These are costs that society should not bear. *Lovasco,* at 793–94. For these reasons, courts generally conclude that investigative delays are justified. *Calderon,* at 353.

The disparate timing of the charging decisions here falls entirely within the bounds of prosecutorial discretion. Only

8 days separated the dates when the cases were deemed sufficient for charging. During that period, further investigation took place. There has been no showing that the juvenile court prosecutor's staff and the adult criminal division follow identical charging procedures, handle similar case loads, or otherwise operate at the same pace. Thus, the disparate charging decisions could be the result of institutional, as well as individual, differences in evaluating a case.

Eskridge next argues that the State never explained the precise reasoning behind its charging decision beyond the simple allegation that the case was insufficient for charging until the subsequent information was received. Indeed, at the Superior Court hearing, Linda Walton did not specify what information was lacking when the case was originally screened, did not identify what additional information was requested from the police, and did not explain how the receipt of that information tipped the balance in favor of sufficiency.

Unfortunately for Eskridge, however, the State was not asked for this information. Eskridge had every opportunity at the Superior Court hearing to cross–examine Walton. She had Eskridge's file with her and could have answered the very questions that Eskridge now raises for the first time on appeal. That Eskridge chose not to do so at the appropriate time cannot be held against the State now. In sum, the State adequately explained the charging delay as being necessary for further investigation. None of the facts and arguments that Eskridge has raised on appeal justify a contrary conclusion.[3]

---

[3]In finding the State's explanation inadequate, the Court of Appeals found convincing the fact that the additional information sought by the juvenile court prosecutors did not appear in the supplemental certification for determination of probable cause that was filed after Eskridge was added as a codefendant in the Superior Court action. However, additional information of this sort would not necessarily be included in a document if, for example, that information merely confirmed other facts already present in the record. Furthermore, an investigative delay does not become improper merely because further investigation proves fruitless. *United States v. Lovasco,* 431 U.S. 783, 795 n.16, 52 L. Ed. 2d 752, 97 S. Ct. 2044 (1977).

Finally, we must balance the State's interests against the prejudice suffered by Eskridge. "The ultimate test is '"whether the action complained of . . . violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions"'." *Alvin,* at 605 (quoting *Calderon,* at 353). The importance of allowing the State to conduct further investigation has been discussed above and in *Calderon.* Such delays serve significant societal interests, including the prevention of erroneous or premature prosecutions.

The importance of these delays outweighs any prejudice that Eskridge suffered from the loss of juvenile court jurisdiction. As we stated in *Alvin,* "the State has a stronger interest in maintaining an orderly administration of judicial process than in disrupting that process to give special advantage in the system to any particular suspect." *Alvin,* at 606. The State's actions, prompt as they were, do not violate fundamental conceptions of justice.

Therefore, the trial court properly found that Eskridge's due process rights were not violated. The Court of Appeals is reversed and Eskridge's convictions are reinstated.

CALLOW, C.J., and BRACHTENBACH, DOLLIVER, and ANDERSEN, JJ., concur.

PEARSON, J. (dissenting)—I agree with the analysis of the Court of Appeals that preaccusatorial delay violated defendant Eskridge's due process rights and that his conviction must be reversed and the case dismissed. *State v. Lidge,* 49 Wn. App. 311, 317–21, 742 P.2d 741 (1987). Therefore, I dissent.

My review of the record convinces me that the Court of Appeals was correct when it stated:

We conclude that the trial court's findings do not support its conclusion that the delay was neither intentional nor negligent. First, Walton's testimony, which was based solely on her review of the file, did no more than establish that her office followed its usual procedure. The fact

that the prosecuting attorney's office made a determination on the legal sufficiency of the case does not answer the question of whether that determination was made negligently. Put another way, the fact that the State acted procedurally properly begs the question of whether the resulting delay was justifiable. We know of no case, and none is cited, where conclusory testimony that a case was "not sufficient" was found, standing alone, to satisfy the burden placed on the State by *Calderon.* [*State v. Calderon,* 102 Wn.2d 348, 684 P.2d 1293 (1984).]

*State v. Lidge, supra* at 319.

The Court of Appeals points out quite correctly that in *State v. Calderon,* 102 Wn.2d 348, 684 P.2d 1293 (1984) "the State offered extensive evidence demonstrating that it was involved in an ongoing large–scale undercover drug buying operation that involved numerous additional arrests which had to be synchronized with the defendant's." *State v. Lidge, supra* at 320.

In this case, the State "failed to offer any evidence of *what* information it lacked on May 13 or what additional information it later received which made the case 'sufficient.'" *State v. Lidge, supra* at 320. Identical charges to those filed against the adult codefendants ultimately were filed against defendant Eskridge.

I therefore agree with the Court of Appeals that the State failed to present any facts justifying the delay which caused defendant Eskridge to be subject to prosecution as an adult rather than a juvenile. I disagree with the majority's assertion that Eskridge should be responsible for establishing the cause for the delay. That burden properly rests with the State, which caused the delay, once the defendant establishes the delay prejudiced him. *State v. Calderon, supra.*

On these facts, the defendant has met his burden of showing prejudice by establishing that there was a prosecutorial–caused delay in bringing the charges and that this delay prevented the juvenile court from exercising its jurisdiction over him. *State v. Calderon, supra.* The gravity of loss of juvenile jurisdiction in this case far outweighs the

importance to the State of the delay. *State v. Alvin,* 109 Wn.2d 602, 746 P.2d 807 (1987).

The majority points out that an "investigative" delay does not become improper merely because further investigation proves fruitless. Footnote 3 (citing *United States v. Lovasco,* 431 U.S. 783, 52 L. Ed. 2d 752, 97 S. Ct. 2044 (1977)). While this is true, such a procedure creates a potential for great abuse unless some reasonable explanation is required concerning the need for such investigation. The majority eliminates the necessity for the State to make any justification for its delay. This establishes bad precedent.

I agree with the majority that broad discretionary powers of determining when to file charges is an important tool for prosecution. In this case, however, without any explanation of the necessity for an "investigative" delay, the record establishes only that the State delayed solely to charge defendant Eskridge as an adult rather than as a juvenile. This constitutes a violation of Eskridge's due process rights.

I would affirm the Court of Appeals, reverse the conviction, and dismiss the case.

UTTER and DORE, JJ., concur with PEARSON, J.