[No. 21905–7–I. Division One. August 14, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. TREVOR A.
DIXON, *Appellant.*

*Neil M. Fox* and *Theresa B. Doyle* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney, Donna L. Wise, Senior Appellate Attorney,* and *Jesse Franklin, Deputy,* for respondent.

FORREST, J.—Trevor Dixon appeals from his conviction of burglary in the second degree, arguing that his due process rights were violated through prosecutorial delay. We reverse.

On February 19, 1986, a residence in Renton was burgled by two young men. They were observed entering the house by neighbors, who called the police. The police observed the men leaving the house and gave chase. One of the men, Danton DeMarr, was apprehended. The other, Trevor Dixon, was recognized by Officer Peters from prior contacts, but was not apprehended at the time.

A pair of cowboy boots were found inside the house and were identified by Dixon's mother and sister as belonging to Dixon. Fingerprints were lifted from a stereo in the house that had been moved but not removed. These fingerprints belonged to Dixon, but the fingerprints were not processed until 15 months after the burglary.

DeMarr confessed and gave police a statement that he and Dixon had entered the house to steal marijuana. DeMarr was charged and arraigned in May 1986, but failed to appear for trial. He was eventually apprehended on a bench warrant and pleaded guilty on March 18, 1987.

The State wished to have DeMarr's testimony to ensure Dixon's conviction, and therefore it delayed filing an information charging Dixon until DeMarr had pleaded guilty. Dixon reached his majority on March 4, 1987, a year after the investigation was substantially complete. Dixon was not charged until October 12, 1987. No reasons for this additional delay were presented.

■■ Loss of juvenile jurisdiction because of delay by the prosecution constitutes "prejudice" requiring the State to justify the delay. When the State has given its reasons, the court then balances these against the prejudice to the defendant:[1]

> (1) The defendant must show he was prejudiced by the delay; (2) the court must consider the reasons for the delay; and (3) if the State is able to justify the delay, the court must undertake a further balancing of the State's interest and the prejudice to the accused.

While recognizing the rule in various forms, to date the Washington courts have never vacated a conviction for loss

---

[1] *State v. Lidge,* 111 Wn.2d 845, 848, 765 P.2d 1292 (1989).

of juvenile jurisdiction.[2] In this case, the reason given for delay was sequential prosecution to secure the testimony of an accomplice after the accomplice had been convicted. *State v. Boseck*[3] recognizes that sequential prosecution is a valid reason for delay. So do we. However, identifying an appropriate reason does not conclude the matter. The reason must be weighed against the prejudice.

The extremes are obvious. If the State lacks evidence essential to convict, the interest of the defendant in juvenile jurisdiction is outweighed by that of the State, and only the statute of limitations limits the State's right to prosecute. On the other hand, if the State has a strong case, including the testimony of one accomplice, a delay awaiting cumulative testimony from another accomplice would not be justified. The difficulty is applying the balancing test to cases such as the one before us.

The State had the following evidence available: two neighbors, Suzanne Keroes and Colleen Guland, were ready to testify that they saw Dixon and DeMarr enter the house. A responding police officer, Officer Peters, was ready to testify that she saw Dixon and DeMarr run from the house and that she recognized Dixon from prior contacts. Dixon's cowboy boots were found in the burgled house, and were identified by Dixon's mother and sister. Finally, Dixon's fingerprints were found in the house on a stereo that had not yet been removed, although the fingerprints were not known to be Dixon's until 15 months later because no request for processing and identification was made. Since this information could reasonably and easily have been available, we evaluate the State's action as if it had this identification before the loss of juvenile jurisdiction. Even

---

[2] *See State v. Lidge, supra; State v. Schifferl,* 51 Wn. App. 268, 753 P.2d 549 (1988); *State v. Alvin,* 109 Wn.2d 602, 746 P.2d 807 (1987); *State v. Robbers,* 46 Wn. App. 558, 731 P.2d 522 (1986), *review denied,* 108 Wn.2d 1005 (1987); *State v. Boseck,* 45 Wn. App. 62, 723 P.2d 1182 (1986); *State v. Calderon,* 102 Wn.2d 348, 684 P.2d 1293 (1984).

[3] 45 Wn. App. 62, 723 P.2d 1182 (1986).

had there been no accomplice statement originally, or if the accomplice had been permanently unavailable, there was still ample evidence for the State to go to trial. While desirable, the accomplice's testimony was not essential. The State conceded at oral argument that it would have filed the case without the accomplice statement.

The State urges that DeMarr's testimony was needed to prove intent and without it, Dixon might have been convicted only of criminal trespass. In addition to the facts already noted, the State, of course, would have had the benefit of the inference of intent provided in RCW 9A.52.040.[4] Further, in a trial to a juvenile judge, rather than to a jury, there is less need for the State to introduce every possible bit of evidence and it can more confidently rely on the drawing of inferences.

On the other side of the scale is the "prejudice" created by loss of juvenile jurisdiction. There is little discussion in the cases about the significance to the defendant of the loss of juvenile jurisdiction. Although not of constitutional dimension,[5] it is a valuable right. Indeed, it is sufficiently valuable that the Washington Supreme Court has recently once again held that juveniles are not entitled to a jury trial,[6] even after the adoption of the Juvenile Justice Act of 1977, RCW 13.40, which narrows the differences between adult and juvenile prosecutions. To justify that holding, the court necessarily found significant differences between juvenile proceedings and adult criminal proceedings and found benefits to the juvenile to compensate for denial of jury trial:

---

[4]"In any prosecution for burglary, any person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein, unless such entering or remaining shall be explained by evidence satisfactory to the trier of fact to have been made without such criminal intent."

[5]*State v. Schaaf*, 109 Wn.2d 1, 5–6, 743 P.2d 240 (1987).

[6]*Schaaf.*

The fact that juveniles are accountable for criminal behavior does not erase the differences between adult and juvenile accountability. The penalty, rather than the criminal act committed, is the factor that distinguishes the juvenile code from the adult criminal justice system. Under the juvenile code, a court order adjudging a child delinquent or dependent "shall in no case be deemed a conviction of crime" . . .

Important distinctions result from being accused and convicted of a crime as opposed to an offense. A juvenile may be eligible for a diversion agreement in lieu of prosecution, and if prosecuted and found guilty will normally be sent to a juvenile detention facility. Indeed, the purpose of the juvenile system is to provide an alternative to incarceration in adult correctional facilities. . . .

. . . .

. . . Recently we agreed that "it would be a mistake to assume that the new legislation has turned completely from the ideal of rehabilitating juvenile offenders." The purposes and policies of the JJA are more complex than those of the adult criminal justice system, as expressed by the Sentencing Reform Act of 1981. The policies of the JJA are two fold: to establish a system of having primary responsibility for, being accountable for, and responding to the needs of youthful offenders; and to hold juveniles accountable for their offenses. Nowhere in the adult criminal system is there a policy of responding to the needs of offenders or of rehabilitating them. Rather, punishment is the paramount purpose of the adult sentencing system.

(Footnotes omitted.) *State v. Schaaf, supra* at 7–8, 10.

 In our view, it takes more than a plausible reason for delay to outweigh the valuable right to fact–finding and disposition as a juvenile. In balancing, the following are significant, but not exclusive, factors to be considered in evaluating delay: (1) the seriousness of the offense: the more serious the offense, the more deference should be extended to the prosecutor's determination of what is needed for conviction; (2) the defendant's age: more weight should be given to the loss of jurisdiction if the trial and terms of disposition can be completed before age 18; (3) the strength of the prosecutor's case: the stronger the case without the evidence that is the reason for the delay, the less weight the reason has; and (4) the weight of the sought evidence: a corollary of (3), the greater the weight of the

sought evidence, the greater the weight of the reason for waiting for it.

Applying the factors to this case, we hold that the delay constituted an abuse of discretion and the case should be dismissed. Although burglary is sometimes very serious, burglary by juveniles is very common and does not rank high in the seriousness level of offenses. There was ample time to process Dixon and have him complete the appropriate disposition within the juvenile system. The prosecutor had a strong case and the additional evidence of DeMarr's testimony was not crucial. Hence, all four factors tilt the scale in favor of Dixon.

Although *State v. Boseck*[7] at least suggests a contrary result, we do not interpret the case to hold that sequential prosecution will always justify the loss of juvenile jurisdiction. The benefits of juvenile jurisdiction sufficient to justify the denial of jury trial require more. If the *State v. Lidge*[8] test quoted previously is to be made operational and not illusory, this is an appropriate case so to do.

*Lidge* recognizes the State's important societal interests in "[a]llowing prosecutors broad discretion to delay the filing of charges until they are 'completely satisfied that [they] should prosecute and will be able promptly to establish guilt beyond a reasonable doubt'".[9] We recognize and respect prosecutorial discretion. We do not lightly find it abused. But it is in the nature of discretion that it may be erroneously exercised. Indeed, "abuse of discretion" by a trial judge is a routine issue on appeal; appellate courts have no hesitation of finding such abuse when warranted.

Society's interest in prosecutorial discretion is, at bottom, society's interest in convicting those who commit crimes; a

---

[7]45 Wn. App. 62, 723 P.2d 1182 (1986).

[8]111 Wn.2d 845, 765 P.2d 1292 (1989).

[9]111 Wn.2d at 850, quoting *United States v. Lovasco,* 431 U.S. 783, 795, 52 L. Ed. 2d 752, 97 S. Ct. 2044 (1977).

significant interest indeed. However, that interest is subordinated to the competing interests of fairness and due process by a host of requirements in constitutions, statutes, court rules and court decisions. To treat a juvenile in the juvenile process by proceeding promptly is a value of fairness and due process.

The importance of the prompt processing of criminal trials has resulted in the adoption of the speedy trial rule, CrR 3.3, which has placed great burdens on prosecutors and resulted in numerous dismissals. Conviction is important, but not all important. Prompt handling is even more important for juveniles than adults. There is considerable loss in the effectiveness of society's sanction when a young man who commits a crime at 16 winds up being punished as an adult, well past his 18th birthday.

Our holding does not place an undue burden on prosecutors. When juvenile jurisdiction may be lost by waiting for additional evidence to become available, they must carefully evaluate their case and proceed if they reasonably can. There may have been a conscious decision in this case, but it is not made apparent on the record. More likely it was assumed that DeMarr would be promptly processed; this case, once placed on hold to await DeMarr's conviction, remained there without any conscious decision. If it was a deliberate decision, it was an abuse of prosecutorial discretion; if it was oversight, it was no less so.

The conviction is reversed and the charges against Dixon are dismissed with prejudice.

WINSOR, J., concurs.

COLEMAN, C.J. (dissenting)—It is undisputed that the reason for the delay in charging appellant was the prosecutor's decision to seek sequential prosecution in order to secure the testimony of an accomplice after the accomplice had been convicted. There is no contention that the State acted in bad faith by engaging in delay to circumvent the juvenile justice system. The majority acknowledges, as it

must, that sequential prosecution is a valid reason for delay. *State v. Boseck,* 45 Wn. App. 62, 723 P.2d 1182 (1986). The majority further acknowledges that *Boseck* "at least suggests a contrary result" to that reached here. Majority, at 227. The majority asserts, however, that identifying an appropriate reason for delay does not conclude the matter. The reason for the delay, the majority says, "must be weighed against the prejudice." Majority, at 224. This is entirely contrary to the holding in *State v. Lidge,* 111 Wn.2d 845, 765 P.2d 1292 (1989), which recognized that important societal interests are served by "[a]llowing prosecutors broad discretion to delay the filing of charges until they are 'completely satisfied that [they] should prosecute and will be able promptly to establish guilt beyond a reasonable doubt[.]'" *Lidge,* at 850 (quoting *United States v. Lovasco,* 431 U.S. 783, 795, 52 L. Ed. 2d 752, 97 S. Ct. 2044 (1977)).

Before finding an abuse of discretion, the action or decision taken must be manifestly unreasonable or exercised upon untenable grounds. *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971). Stated another way, discretion is not abused unless no decisionmaker, acting reasonably, would have taken the course adopted. *Griggs v. Averbeck Realty, Inc.,* 92 Wn.2d 576, 584, 599 P.2d 1289 (1979).

The majority abandons the abuse of discretion standard employed by *Lidge* and the other authorities cited in its opinion and instead adopts a test that the evidence the State wishes and which it delays charging in order to obtain must be essential. The majority says, "While desirable, the accomplice's testimony was not essential." Majority, at 225. It is not surprising that there is no authority cited for this proposition because there is none. Such a rule completely vitiates the discretionary standard adopted in *Lidge.*

One of the State's proffered reasons for the delay was the need to obtain the accomplice's testimony to prove intent so as to avoid the possibility that Dixon might have been convicted only of criminal trespass. The majority dismisses

this reason by pointing to the inference of intent statute (RCW 9A.52.040) and curiously observes: "Further, in a trial to a juvenile judge, rather than to a jury, there is less need for the State to introduce every possible bit of evidence and it can more confidently rely on the drawing of inferences." Majority, at 225. This assertion which suggests that judges are easier to convince than jurors is speculative at best and is certainly not in accord with this writer's experience with bench trials.

In setting forth its balancing test, the majority completely rewrites the law without the benefit of any precedent. In discussing the seriousness prong of its test, the majority acknowledges that burglary is sometimes very serious, but goes on to assert that "burglary by juveniles is very common and does not rank high in the seriousness level of offenses." Majority, at 227. I question whether the seriousness of an offense alone is a proper criterion for determining whether delay in charging is justified. Even assuming that it is, I cannot accept the suggestion that because certain criminal activity occurs frequently, it is somehow less serious. Persons who have suffered burglaries may also be at a loss to understand the logic of the majority's minimization of juvenile burglary.

I agree with the majority that discretion may be erroneously exercised and that appellate courts have no hesitation in finding a judicial abuse of discretion when warranted. Majority, at 227. The majority concedes, however, that delay to obtain testimony is legitimate. The majority even acknowledges that it would have been "desirable" to have had the accomplice's testimony. Majority, at 225. As the *Lidge* court acknowledged, courts should not substitute their judgment for the prosecutor's regarding charging decisions.

> [T]he Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment. Judges are not free, in defining "due process," to impose on law enforcement officials our "personal and private notions"

of fairness and to "disregard the limits that bind judges in their judicial function."

*Lidge,* at 850 (quoting *Lovasco,* at 790). Accordingly, there was a tenable basis for the decision to delay filing charges in the case. While I agree that it was not "essential" to delay prosecution until the accomplice had been convicted, I cannot say that the decision was manifestly unreasonable or exercised upon untenable grounds.

Finally, the majority's decision also seems to be at odds with the holding in *State v. Schifferl,* 51 Wn. App. 268, 753 P.2d 549 (1988). In *Schifferl,* even a negligent act on the part of the State causing delay beyond the defendant's 18th birthday was deemed insufficient to warrant dismissal of criminal charges.

For the reasons indicated, I must respectfully dissent. I would affirm the judgment of the trial court.

Review granted at 113 Wn.2d 1022 (1989).