[No. 56491–4. En Banc. June 7, 1990.]

THE STATE OF WASHINGTON, *Petitioner,* v. TREVOR A. DIXON, *Respondent.*

*Norm Maleng, Prosecuting Attorney,* and *Donna L. Wise, Senior Appellate Attorney,* for petitioner.

*Theresa B. Doyle* of *Washington Appellate Defender Association,* for respondent.

*Seth R. Dawson, Prosecuting Attorney for Snohomish County,* and *Seth Aaron Fine, Deputy,* amici curiae for petitioner.

GUY, J.—Respondent was found guilty of second degree burglary for a crime he committed when 16 years old. At the time of judgment and sentencing, he had turned 18 and consequently was sentenced as an adult. The Court of Appeals reversed the conviction on the basis that the

State's delay in charging the respondent resulted in a loss of juvenile court jurisdiction and thus violated the respondent's right to due process. We find the delay in this case was justified and within prosecutorial discretion. Consequently, we reverse the Court of Appeals.

FACTS

On February 19, 1986, at approximately 1:30 p.m., police responded to a burglary report at a residence in Renton. As they were positioning themselves around the house, two individuals ran out the front door. Officer Peters recognized one of the individuals as the respondent, Trevor Dixon. Upon giving chase, Danton DeMarr was apprehended; however, Dixon managed to elude the police.

Inside the house police found a pair of cowboy boots which Dixon's mother and sister identified as his. Police also removed fingerprints from a stereo that had been moved but not taken. A latent fingerprint examination performed approximately 15 months after the crime was committed showed the prints belonged to Dixon. Upon questioning, DeMarr indicated he knew the owner of the home and admitted that he and Dixon had intended to steal some marijuana they knew the owner had.

The owner of the home provided police with an itemized statement detailing what had been stolen. However, police were never able to verify that the items were actually missing. Moreover, the only item recovered was a bag containing $2.95 in change which was not listed as missing.

DeMarr was subsequently charged with second degree burglary and his trial set for September 2, 1986; however, he failed to appear. He was eventually apprehended and pleaded guilty March 18, 1987. Dixon had not yet been charged.

On March 4, 1987, Dixon turned 18 years old. As a result, on October 12, 1987, he was charged as an adult with second degree burglary. He moved to dismiss the charge, alleging that his right to due process had been violated by the State's delay in filing charges, which had resulted in his

turning 18 and the subsequent loss of juvenile court jurisdiction. The motion was denied and he was subsequently found guilty of second degree burglary.

The Court of Appeals reversed and dismissed the charge on the basis that Dixon's right to due process had been violated by the State's delay in filing charges. *State v. Dixon,* 55 Wn. App. 221, 777 P.2d 547 (1989). This court granted discretionary review and now reverses the Court of Appeals.

## ANALYSIS

■ This court has developed a 3–step test from *United States v. Lovasco,* 431 U.S. 783, 52 L. Ed. 2d 752, 97 S. Ct. 2044 (1977) to determine whether preaccusatorial delay by the State in filing charges violates an individual's right to due process where juvenile court jurisdiction is lost as a result of the delay. This test provides: (1) that the defendant show prejudice resulting from the delay; (2) that there are reasons for the delay which the court must consider; and (3) where the State can justify the delay, that the court engage in balancing the State's interest against the prejudice to the accused. *State v. Lidge,* 111 Wn.2d 845, 848, 765 P.2d 1292 (1989) (citing *State v. Alvin,* 109 Wn.2d 602, 604, 746 P.2d 807 (1987)).

In balancing the interest of the State against the prejudice to the accused, the standard this court has used is "'whether the action complained of . . . violates those "fundamental conceptions of justice which lie at the base of our civil and political institutions'." *State v. Calderon,* 102 Wn.2d 348, 353, 684 P.2d 1293 (1984) (quoting *United States v. Lovasco, supra* at 790).

■ ■ Initially we note there is no constitutional right to be tried in a juvenile court. *State v. Sharon,* 33 Wn. App. 491, 494, 655 P.2d 1193 (1982), *aff'd,* 100 Wn.2d 230, 668 P.2d 584 (1983). However, recognizing that the loss of juvenile court jurisdiction deprives an offender of numerous benefits, which include avoiding the stigma of an adult criminal conviction as well as receiving less harsh penalties,

this court has held that offenders carry their burden of showing the minimal prerequisite of prejudice when a delay in filing charges deprives the juvenile court of jurisdiction. *State v. Alvin, supra* at 604 (citing *State v. Calderon, supra* at 353). Consequently, because the State's delay in filing charges against Dixon resulted in a loss of juvenile court jurisdiction, we find the Court of Appeals correctly held that Dixon had satisfied the first prong of the *Lidge* test. *State v. Dixon,* 55 Wn. App. at 223.

■ In analyzing whether the requirements of the second prong have been fulfilled, the State argues that proceeding sequentially by first obtaining DeMarr's testimony was necessary to establish intent in order to prosecute Dixon successfully for second degree burglary. Our courts have recognized sequential prosecution as a legitimate and sufficient reason justifying preaccusatorial delay by the State in filing charges. *See State v. Boseck,* 45 Wn. App. 62, 67, 723 P.2d 1182 (1986). Consequently, we find the second prong of the *Lidge* test has been satisfied.

In applying the third and final prong of the *Lidge* test, the Court of Appeals deviates from the rationale set forth by this court and in doing so apparently contradicts its resolution of the second prong. Although acknowledging *Boseck* and conceding the legitimacy of the State's reason for delay, the Court of Appeals ultimately concluded that the State's reason was not justified. In doing so, the court applies an incorrect standard of review for prosecutorial discretion and improperly concludes that the delay constituted an abuse of that discretion. In balancing the interests of the State against the prejudice to Dixon, the Court of Appeals departs from the traditional "fundamental conceptions of justice" standard used by this court and instead applies its own standard, stating:

> In our view, it takes more than a plausible reason for delay to outweigh the valuable right to fact–finding and disposition as a juvenile. In balancing, the following are significant, but not exclusive, factors to be considered in evaluating delay: (1) the seriousness of the offense: the more serious the offense, the

more deference should be extended to the prosecutor's determination of what is needed for conviction; (2) the defendant's age: more weight should be given to the loss of jurisdiction if the trial and terms of disposition can be completed before age 18; (3) the strength of the prosecutor's case: the stronger the case without the evidence that is the reason for the delay, the less weight the reason has; and (4) the weight of the sought evidence: a corollary of (3), the greater the weight of the sought evidence, the greater the weight of the reason for waiting for it.

*State v. Dixon,* 55 Wn. App. at 226.

As to evaluating preaccusatorial delay by the State, the appropriateness of these factors is questionable. In particular, the Court of Appeals concludes that although burglary is sometimes very serious, burglary by juveniles is very common and therefore does not rank high in the seriousness level of offenses. *State v. Dixon, supra* at 227. We note that from a victim's perspective, every crime is serious. Therefore, we agree with the dissent that the seriousness of a crime is not a proper criterion for determining whether a delay in charging is justified. *State v. Dixon, supra* at 230 (Coleman, C.J., dissenting). Further, assuming arguendo that it is, it is unacceptable that a crime becomes less serious simply because it occurs more frequently.

Moreover, these factors do not relate to the fundamental conceptions of justice standard. In particular, (1), (3) and (4) address the reasons for the delay, which more appropriately belong under the second prong of the test. Further, factors (3) and (4) would allow the reviewing court to substitute its judgment for that of the prosecutors as to when charges should be filed.

■ This court has held that "'[t]he determination of when the evidence available to the prosecution is sufficient to obtain a conviction is seldom clear–cut, and reasonable persons often will reach conflicting conclusions.'" *State v. Lidge,* 111 Wn.2d at 850 (quoting *United States v. Lovasco, supra* at 793). Therefore, prosecutors are allowed broad *discretion in delaying the filing of charges* until they are "'completely satisfied that [they] should prosecute and will be able promptly to establish guilt beyond a reasonable

doubt'". *State v. Lidge, supra* at 850 (quoting *Lovasco,* at 795). *See also State v. Judge,* 100 Wn.2d 706, 713, 675 P.2d 219 (1984).

This principle of broad discretion mandates certain limitations on judicial decisionmaking:

> [T]he Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment. Judges are not free, in defining "due process," to impose on law enforcement officials our "personal and private notions" of fairness and to "disregard the limits that bind judges in their judicial function."

*State v. Lidge, supra* at 850 (quoting *United States v. Lovasco, supra* at 790).

Moreover, even though the State has assembled sufficient evidence to prove guilt beyond a reasonable doubt, the due process clause does not require immediate prosecution. *United States v. Lovasco, supra* at 792–95. To hold otherwise might impair a prosecutor's investigation where more than one suspect is involved, thereby preventing society from bringing lawbreakers to justice, pressure resolution of doubtful cases in favor of early and possibly unwarranted prosecution, and preclude full consideration being given to the desirability of nonprosecution in particular cases. *United States v. Lovasco, supra* at 793–94.

Our holding in *State v. Lidge,* 111 Wn.2d 845, 850, 765 P.2d 1292 (1989) that reasonable persons often will reach conflicting conclusions as to when evidence is sufficient to obtain a conviction suggests that courts could infringe upon prosecutorial discretion only where reasonable minds would concur that the delay was unwarranted.

The Court of Appeals failed to apply this "reasonable minds" standard and instead substituted its judgment for that of the State's in determining the strength of the case, the need for the testimony of DeMarr, and when charges should have been filed. Evidence the court considered sufficient to prosecute included: the testimony of two neighbors who saw Dixon and DeMarr enter the house; Dixon's boots which were left in the house and later identified by his

mother and sister; the officer's identification of Dixon at the scene of the crime; and Dixon's fingerprints taken from the stereo. Additionally, the court concluded that to establish intent, the State could rely on the inference of intent provided for in RCW 9A.52.040. That statute provides:

> In any prosecution for burglary, any person who enters or remains unlawfully in a building may be *inferred* to have acted with *intent to commit a crime* against a person or property therein, *unless* such entering or remaining shall be explained by evidence satisfactory to the trier of fact to have been made without such criminal intent.

(Italics ours.)

Notably, Dixon was never caught with any of the alleged stolen items, nor is it clear that his fingerprints on the stereo left in the house would be sufficient to establish his intent to burglarize the home. Therefore, we agree with the State that even with the benefit of the statute, without the testimony of DeMarr to establish Dixon's intent to burglarize the house, Dixon may only have been convicted of criminal trespass.

The Court of Appeals also concludes that in trials before juvenile judges there is less need to introduce every little bit of evidence and, therefore, the State could more confidently rely on inferences to prove its case. *State v. Dixon*, 55 Wn. App. at 225. This statement appears to suggest that in trials to juvenile judges the State bears a lesser burden of proof. We do not find this to be the case. Moreover, the court offers no support for its proposition.

Finally, the Court of Appeals decision is contrary to the prevailing case law of this state. To date, Washington courts have never vacated a conviction due to a loss of juvenile court jurisdiction. *See State v. Lidge*, 111 Wn.2d 845, 765 P.2d 1292 (1989); *State v. Alvin*, 109 Wn.2d 602, 746 P.2d 807 (1987); *State v. Calderon*, 102 Wn.2d 348, 684 P.2d 1293 (1984); *State v. Schifferl*, 51 Wn. App. 268, 753 P.2d 549 (1988); *State v. Robbers*, 46 Wn. App. 558, 731 P.2d 522 (1986), *review denied*, 108 Wn.2d 1005 (1987); *State v. Boseck*, 45 Wn. App. 62, 723 P.2d 1182 (1986).

While acknowledging that juveniles potentially may be deprived of a number of benefits resulting from a loss of juvenile court jurisdiction, our courts consistently have recognized that there are more significant societal interests justifying the State's delays that outweigh the juvenile's interest in being tried in a juvenile court. *State v. Lidge, supra* at 852.

Accordingly, this court has recognized only two instances where it may be proper to vacate a conviction due to a loss of juvenile court jurisdiction. In *State v. Lidge, supra*, this court held that a deliberate delay by the State to circumvent the juvenile justice system would violate due process. *State v. Lidge, supra* at 848. *See also State v. Alvin, supra* at 604; *State v. Calderon, supra* at 353. Dixon, however, has conceded that the State's delay was not deliberate.

We have also stated that a negligent delay in filing may violate due process. *State v. Lidge, supra* at 848. Dixon argues that the State's delay in processing his fingerprints taken from the stereo constitutes negligence. His position assumes that with the processed fingerprints, the State would have had sufficient evidence to proceed with filing charges.

On several occasions, this court has indicated its reluctance to review the sufficiency of investigative procedures resulting in a delay in filing charges, stating:

> Absent extraordinary circumstances, it is appropriate that juvenile offenses be managed in the same manner as are adult crimes. We are reluctant to interfere with standard investigatory procedures by requiring special treatment for juvenile suspects.

*State v. Lidge, supra* at 849 (quoting *State v. Calderon, supra* at 354).

We note there was no evidence presented that would show the latent fingerprint examination to be a deviation from standard investigatory procedures. Consequently, assuming the State had a duty to follow its investigatory procedures, we find no evidence that it breached that duty.

Therefore, we hold that in this instance there was no negligence on the part of the State that would result in a violation of Dixon's right to due process.

Further, assuming arguendo that the State's delay in processing the prints comprised negligence, there was no indication in the record that, had the State immediately identified the prints, it would have had sufficient evidence to establish Dixon's guilt for second degree burglary beyond a reasonable doubt and thus would have filed charges. Consequently, absent some showing that the State would have proceeded once the prints were processed, the effect of this delay was de minimis and does not amount to the type of negligence that would violate a juvenile's right to due process.

While we recognize that a juvenile is deprived of important benefits by a loss of juvenile court jurisdiction, there is no statutory or constitutional mandate that requires they be given special treatment to achieve that end. Thus, we have held that requiring police and prosecutors to keep track of every juvenile's birthday amounts to requiring special treatment for them and special procedures for juvenile suspects are not required in Washington. *State v. Alvin, supra* at 605.

Our holding today is not intended to expand the scope of prosecutorial discretion, nor is it intended to suggest that a loss of juvenile court jurisdiction could never result in a due process violation. We merely hold that absent a showing of deliberate or negligent delay on the part of the State which results in a loss of juvenile court jurisdiction, a juvenile's right to due process is not violated. We find that neither is present in this case and, therefore, reverse the Court of Appeals.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, DURHAM, and SMITH, JJ., concur.