[No. 34529-0-I. Division One. September 5, 1995.]

THE STATE OF WASHINGTON, *Appellant*, v. MATHEW G. GIDLEY, *Respondent*.

---

[13]*Hamilton v. Department of Labor & Indus.*, 111 Wn.2d 569, 571, 761 P.2d 618 (1988).

*Gregory E. Jackson, Prosecuting Attorney,* for appellant.
*Kathryn A. Russell of Washington Appellate Project,* for respondent.

Cox, J. — In May 1993, the King County Police responded to a call that someone had raped a female minor.

The police soon established that the sole suspect was Mathew Gidley, a seventeen-year-old friend of the victim. Gidley's eighteenth birthday was in July 1993. The police did not refer the case to the prosecutor until after they interviewed Gidley in August 1993. The State charged him as an adult with third degree rape. The trial court granted his motion to dismiss on the basis of claimed pre-accusatorial delay. The State appeals. Because the trial court found there was no showing of deliberate or negligent delay by the State in handling this matter, we reverse and remand for trial.

Early on May 20, 1993, King County Police responded to a call regarding the alleged rape of fourteen-year-old M.A. late the previous evening. When the responding officer arrived, M.A. refused to speak with him. The information he gleaned concerning the alleged crime was obtained primarily from M.A.'s best friend, E.M. E.M. informed the officer that M.A. had told her that Matt Gidley, a seventeen-year-old family friend, had raped her in her home. The victim's brother, who was a friend of Gidley's, had to be restrained by the responding officers from going over to Gidley's house two blocks away to "kill" him after he was told that Gidley had raped his sister. The responding officers neither obtained Gidley's address or telephone number that evening nor did they attempt to make any contact with Gidley.

On May 24, 1993, the detective to whom the case was assigned left a message for M.A. and her mother. Detectives interviewed M.A. on June 1, 1993, at which time she herself for the first time provided the police with a statement that Gidley raped her. Police also learned from another witness interviewed that day that Gidley would turn eighteen in July 1993. The King County Police Department tries as a matter of policy to obtain a statement from the suspect before submitting a case for filing charges.

On June 15, 1993, M.A.'s mother told the detective that Gidley had moved and that she would try to get Gidley's

new address for him. Gidley's eighteenth birthday was July 1, 1993. On July 12, 1993, M.A.'s mother called the detective with Gidley's new address. The detective attempted to contact Gidley at that address on July 23, 1993, but discovered it was incorrect and left a message for M.A.'s mother to that effect on August 4, 1993. On August 9, 1993, M.A.'s mother called the detective to give him Gidley's phone number. The police interviewed Gidley on August 10, 1993. During the interview, he admitted that he had sexual intercourse with M.A. on May 19, 1993, but stated that it was consensual. The detective completed his paperwork and sent it to the King County Prosecuting Attorney for a filing decision on August 18, 1993.

The State charged Gidley by information with one count of third degree rape on December 29, 1993. On March 25, 1994, Gidley filed a motion to dismiss the case against him for preaccusatorial delay. After hearing argument and testimony, the trial court found that the State had all the information it needed to file charges on June 1, 1993. The trial court, relying on *State v. Calderon*, 102 Wn.2d 348, 684 P.2d 1293 (1984), concluded that the police were not negligent in their duties and did not deliberately deprive the juvenile court of jurisdiction. But the trial court also concluded that the prejudice to the defendant outweighed the State's reasons for the delay. The trial court therefore granted the defendant's motion and entered an order of dismissal.

## PREACCUSATORIAL DELAY

 The State argues on appeal that the trial court erred in weighing the prejudice to the accused against the reasons for the delay when it did not find that the State's conduct in causing the delay was negligent or deliberate. In determining whether preaccusatorial delay in the filing of a criminal charge against a juvenile defendant violates due process, a court must (1) consider whether the defendant was prejudiced by the delay; (2) consider the reasons for the delay; and (3) balance the reasons for the delay

against the prejudice sustained by the defendant. *State v. Norby*, 122 Wn.2d 258, 263, 858 P.2d 210 (1993); *Calderon*, 102 Wn.2d at 353. A defendant meets his initial burden of establishing prejudice for purposes of this three-level inquiry when a preaccusatorial delay deprives the juvenile court of jurisdiction. *State v. Alvin*, 109 Wn.2d 602, 604, 746 P.2d 807 (1987). In *Calderon*, the case in which the Washington Supreme Court first articulated the three-level inquiry, the Court explained:

> Ultimately, the test suggested by the United States Supreme Court is "whether the action complained of . . . violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions". [*United States v. Lovasco*, 431 U.S. 783, 97 S. Ct. 2044, 52 L. Ed. 2d 752 (1977)], at 790.
>
> A deliberate delay to circumvent the juvenile justice system violates due process. *See, e.g., State v. Scurlock*, [286 Or. 277, 593 P.2d 1159 (1979)]. It has been suggested that negligently failing to bring charges promptly may also establish a constitutional violation. *Lovasco*, at 795 n.17; *State v. Avery*, [80 Wis. 2d 305, 259 N.W.2d 63 (1977)]. In general, however, courts find that delays to allow continued investigation of the crime or other related criminal activity are justified, citing broad prosecutorial discretion in matters of charging as the policy reason for not formulating strict rules with regard to the proper time to bring a charge. *See, e.g., Lovasco*.

*Calderon*, 102 Wn.2d at 353. *Calderon* establishes that a deliberate delay violates due process, but delays for the purpose of continued investigation generally do not. The case thus suggests that cases that involve negligence or something other than the need for continued investigation could be found to violate due process in circumstances where the prejudice to the accused significantly outweighs the reasons for the delay. Apparently, the trial court believed that, even though the delay here at issue was neither deliberate nor negligent, the prejudice to the accused outweighed the reasons for the delay.

Neither side brought to the court's attention below *State v. Dixon*, 114 Wn.2d 857, 792 P.2d 137 (1990). In *Dixon*, the Washington Supreme Court held that "absent a show-

ing of deliberate or negligent delay on the part of the State which results in a loss of juvenile court jurisdiction, a juvenile's right to due process is not violated." 114 Wn.2d at 866. Here, the trial court explicitly concluded that the detective was not negligent in pursuing his investigation and did not deliberately deprive the juvenile court of jurisdiction. We hold that, under the Supreme Court's holding in *Dixon*, dismissal was not warranted.

■ Even if the trial court had properly reached the point of balancing the reasons for delay against the prejudice sustained by Gidley, we believe the trial court's conclusion was erroneous. The factors relied upon by the trial court in assessing that prejudice—the stigma of an adult conviction, the increased penalty, and the fact that a conviction would count as a strike under the three strikes law—do not outweigh the State's strong interest in the orderly administration of the judicial process. *See Alvin*, 109 Wn.2d at 606.

It is well established that the State has no special duty to disrupt the orderly administration of the judicial process to give special advantage in the system to any particular suspect or to assure that a case is filed in juvenile court prior to a defendant's eighteenth birthday. *See State v. Lidge*, 111 Wn.2d 845, 849, 765 P.2d 1292 (1989); *Alvin*, 109 Wn.2d at 606. The delay in this case stemmed from standard police investigatory procedure requiring that the accused be interviewed before the case was submitted for a filing decision. By following standard procedure, the detective here was able to confirm with the accused an important element of the crime—intercourse. Had the detective referred the matter for filing without attempting to interview the accused, the prosecutor would have lacked this significant piece of information. We cannot say that an investigatory police procedure requiring that the police interview the accused before referring a matter for filing is flawed, particularly when a premature referral could result in a wrongful charge. *See Dixon*, 114 Wn.2d at 863; *Lidge*, 111 Wn.2d at 850 (important societal interests are

served by minimizing the risk that incomplete police investigations will result in charges being brought against innocent persons and allowing prosecutors broad discretion to delay filing of charges until they are completely satisfied that they should prosecute).

While we recognize that the police arguably could have obtained information concerning the accused's whereabouts and could have interviewed him at an earlier point in time, we note that Gidley does not challenge on appeal the trial court's conclusion that the detective was not negligent in investigating this case. Standard police procedure was followed here. *See State v. Schifferl*, 51 Wn. App. 268, 273-74, 753 P.2d 549 (1988). As we said in *Schifferl* 51 Wn. App. at 274,

> [a defendant] has a legitimate expectation that the State will not subvert the process for tactical advantage and a legitimate expectation that the State will not ignore his interests through negligent processing under circumstances where harm to those interests can be foreseen. However, he does not have a right to expect perfection in the process.

The delay in this case did not violate those " 'fundamental conceptions of justice which lie at the base of our civil and political institutions.' " *See Calderon*, 102 Wn.2d at 353.

We reverse and remand for trial.

BAKER, C.J., and AGID, J., concur.