[No. 23254-5-II. Division Two. January 28, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. STEVEN PHILLIP BRANDT, *Appellant*.

---

[36]*Biggs v. Vail*, 119 Wn.2d 129, 133, 830 P.2d 350 (1992).

*John Francis Hayden*, for appellant (appointed counsel for appeal).

*Christopher O. Shea, Prosecuting Attorney*, for respondent.

ARMSTRONG, A.C.J. — After his 18th birthday, Steven Brandt was convicted in superior court of first degree child molestation. When Brandt was seventeen years old, he told a counselor about previous sexual contact with his seven-year-old cousin. Although the Port Angeles police had the first name, address, and phone number of the victim before Brandt's eighteenth birthday, the State did not charge him until the victim came forward 23 months later. By that time, Brandt had turned eighteen. Brandt moved to dismiss the charge, arguing that the delay in prosecuting his case violated his due process rights by depriving him of juvenile court jurisdiction.[1] The trial court denied the motion to

---

[1] The 23-month delay is calculated based on the date on which the police had

dismiss, concluding that the delay was justified as a reasonable investigatory delay. We affirm.

## FACTS

While in the Naselle Juvenile Institution for first degree child rape and first degree child molestation, Brandt told staff members of his having sexual contact with other victims. On September 28, 1995, Paul Smith of the Department of Social and Health Services gave a one-page report to the Port Angeles Police Department naming three victims, J.W., K.H. and A.M.

The report described A.M. as Brandt's cousin and gave her mother's name as Darcy M. Their address was listed as "UNKNOWN; FAMILY LIVES NEAR MOOSE LODGE." The report also listed Brandt's date of birth and stated that he would be released from Naselle on November 12, 1995. A.M's legal name is A.L., although she has also used the surname M., which is her mother's maiden name.[2]

On October 13, 1995, Officer Peninger made a report from this information and included an address and telephone number for A.M. The address and telephone number were still valid as of January 1998. Detective Coyle, who was assigned to the case, never contacted anyone at the address or phone number listed in Officer Peninger's October 13 report.

Coyle made arrangements with Brandt's parole officer to have Brandt contact him when he was released from Naselle in November 1995. On November 17, 1995, Brandt contacted Coyle. But when Brandt refused to talk without an attorney, Coyle terminated the interview. He did not attempt any further contact with Brandt.

Shortly after November 17, 1995, Coyle asked for further information from Naselle Juvenile Institution about Brandt's disclosures. Naselle provided a polygraph report with several more witnesses and victims mentioned.

---

the victim's address and phone number, October 13, 1995, until charges were filed on September 24, 1997.

[2]For clarity, we will continue to refer to the victim as A.M. and her mother as Darcy M. throughout the opinion.

In January 1996, Coyle attempted to identify witnesses and victims from the information he received from Naselle. On January 23, 1996, Detective Coyle telephoned Ms. Cooper, the mother of one of the listed victims. Because she had moved to Hoquiam, Coyle asked the Hoquiam Police to interview Ms. Cooper and her daughter. On January 26, 1996, the Hoquiam Police Department reported to Coyle that Cooper did not want the police to interview her very young daughter.

Also on January 23, 1996, Coyle contacted the mother of J.W. But this mother also said that her child was too young to be interviewed. On January 30, 1996, Coyle received a written statement from J.W.'s mother concerning her child.

On February 1, 1996, Coyle received a report from two witnesses stating that Brandt had been peeping through a window at them. During this time period, Detective Coyle was also investigating other unrelated felony cases, including some sexual assault investigations.

Brandt turned 18 years of age on February 22, 1996. Coyle's file remained open until A.M. and Darcy M. contacted him on September 23, 1997. Coyle interviewed Darcy and A.M. the same day. Charges of first degree child molestation involving A.M. were filed one day later on September 24, 1997. No charges involving the other victims were filed.

## ANALYSIS

When a preaccusatorial delay results in a loss of juvenile court jurisdiction, we apply a three-part test to determine whether the delay violates due process: "(1) the defendant must show prejudice resulting from the delay; (2) the court must consider the reasons for the delay; and (3) if the State can justify the delay, the court will [balance] the State's interest against the prejudice to the accused." *State v. Warner*, 125 Wn.2d 876, 889, 889 P.2d 479 (1995) (citing *State v. Dixon*, 114 Wn.2d 857, 860, 792 P.2d 137 (1990) (citing *United States v. Lovasco*, 431 U.S. 783, 97 S. Ct. 2044, 52 L. Ed. 2d 752 (1977))); *State v. Frazier*, 82 Wn. App. 576, 586, 918 P.2d 964 (1996).

■ The accused has no constitutional right to be tried as a juvenile. *Dixon*, 114 Wn.2d at 860. But because the loss of juvenile court jurisdiction subjects the accused to harsher penalties and the potential stigma of an adult criminal conviction, we presume prejudice when juvenile court jurisdiction is lost. *Id.* at 860-61; *Frazier*, 82 Wn. App. at 587-88. Therefore, the trial court properly concluded that the first part of the test had been met.

■ The next question is whether the delay in prosecuting Brandt was justified. A preaccusatorial delay may violate due process in only two circumstances: (1) "a deliberate delay by the State to circumvent the juvenile justice system" or (2) "a negligent delay in filing." *Dixon*, 114 Wn.2d at 865 (citing *State v. Lidge*, 111 Wn.2d 845, 848, 765 P.2d 1292 (1989)).

■ ■ In concluding that no due process violation occurred, the trial court relied on *State v. Calderon*, 102 Wn.2d 348, 684 P.2d 1293 (1984). In *Calderon*, the Supreme Court recognized that prosecutors have broad discretion in making charging decisions and "continued investigation of the crime or other related criminal activity [is generally] justified[.]" *Id.* at 353. The Supreme Court has also expressed "its reluctance to review the sufficiency of investigative procedures resulting in a delay in filing charges . . . ." *Dixon*, 114 Wn.2d at 865. The State is not required to establish special procedures for processing juveniles nearing their eighteenth birthdays. *See e.g., State v. Alvin*, 109 Wn.2d 602, 605, 746 P.2d 807 (1987); *Calderon*, 102 Wn.2d at 354; *Frazier*, 82 Wn. App. at 587.

■ ■ Here, the trial court found only a 21-day delay, from February 1, to February 22, 1996, and concluded that the delay was justified because of the number of victims and the amount of investigation to be done. Brandt assigns error to the finding that the delay was only three weeks and to the conclusion that the delay was justified. The trial court's factual findings will be upheld if supported by substantial evidence. *Id.* at 588. A factual finding that is denominated a conclusion of law is treated as a finding on

appeal. *Id.* at 589 n.13 (citations omitted).

██ The trial court found that the critical time period ran from when the police became aware of a potential violation of the law, mid-November, and Brandt's eighteenth birthday, February 22, 1996, not the date that charges were actually filed. The court also found that Detective Coyle, who was investigating several alleged violations of law, was conducting a reasonable investigation through February, even though he did not attempt to locate and talk with one of the alleged victims.

Although no Washington case has clearly defined the time period to be considered in a delayed prosecution claim, we agree with the trial court's analysis. The critical time period ends with the defendant's eighteenth birthday. Any delay after that does not prejudice the defendant because the juvenile court, generally, loses jurisdiction on the defendant's eighteenth birthday. *State v. Acheson*, 75 Wn. App. 151, 155, 877 P.2d 217 (1994) (citing *State v. Bushnell*, 38 Wn. App. 809, 811, 690 P.2d 601 (1984)). Thus, any delay after the defendant's eighteenth birthday is not prejudicial because it does not result in the loss of juvenile court jurisdiction.

Here, as of February, Detective Coyle had learned that two of the victims were either too young or unwilling to testify and those investigations had resulted in a "dead end." But the detective testified that his file was still open and was not closed until it was referred to the prosecutor in 1997. Brandt's principal complaint is that Coyle did not interview A.M. until she and her mother contacted him in September 1997. But similar delays have been found justified as part of routine police investigation.

In *Warner*, 125 Wn.2d at 880, the juvenile disclosed additional victims of sexual abuse while in counseling in October 1990. The police were notified of one of the victims sometime between April 16 and July 9, 1991. This victim was interviewed in July 1991. The police received a report

about two additional victims in September 1991. These two victims were interviewed in March and July 1992. Charges were not filed until late August 1992. In the meantime, the juvenile turned 18 on July 20 1991. Thus, the delay from the initial disclosure in counseling to the filing of charges was approximately 22 months, and the delay from the first report to the police to filing was 13 to 16 months. *See id.* at 881. Yet, without requiring a detailed explanation of the investigation, the Supreme Court said "the pace of the [police] investigation was in no way unusual." *Id.* at 890.

 Moreover investigatory delays are typically justified and, therefore, not negligent when the police follow standard procedures or normal practices. *See Calderon*, 102 Wn.2d at 352-54 (testimony that officers followed standard procedure in verifying fingerprints through lab's priority system justified five-month delay); *Lidge*, 111 Wn.2d at 849 ("[T]he State was justified in following normal prosecutorial procedures, having no obligation to 'rush file'. [juvenile's] case merely because he was about to turn 18.") (citation omitted); *State v. Gidley*, 79 Wn. App. 205, 210, 901 P.2d 361 (1995) (standard procedure requiring police to interview accused before referring the case to the prosecutor justified delay). And the courts have been willing to accept long investigations unless the defendant can show that the police did not follow normal practices. *See Dixon*, 114 Wn.2d at 859, 865-66 (15-month delay in conducting latent fingerprint examination was not negligent where no evidence presented to show that delay in processing was deviation from standard investigatory procedure); *Calderon*, 102 Wn.2d at 352-54 (five-month delay). Here, Brandt did not present evidence that the delay was unusual or negligent given the number of victims involved.

In addition, Brandt's argument assumes that, if Detective Coyle had interviewed A.M. before his eighteenth birthday, the State would have immediately filed the charges in juvenile court. We are unwilling to accept that assumption. Coyle had already encountered two unwilling

witnesses and had no way of knowing whether A.M. would talk with him. Moreover, even if A.M. had cooperated, we cannot assume that the prosecuting attorney would have considered the evidence sufficient to charge. Reasonable persons can differ as to the sufficiency of the evidence to charge and, because of this, the courts have given great discretion to prosecutors in making that decision. *Lidge*, 111 Wn.2d at 850 (citing *Lovasco*, 431 U.S. at 793). In *Dixon*, the Supreme Court found similarly flawed the defendant's assumption that, if the police had processed his fingerprints more quickly, the prosecutor would have decided to file charges. Thus, the court held that even if the delay were negligent, it was de minimis and insufficient to violate the defendant's due process rights. *Dixon*, 114 Wn.2d at 866. We conclude that the trial court did not err in finding justification for the investigatory delay.

We turn, therefore, to balancing the State's interest against the prejudice to Brandt from losing juvenile court jurisdiction. In doing so, we consider " 'whether the action complained of . . . violates those "fundamental conceptions of justice which lie at the base of our civil and political institutions." ' " *Warner*, 125 Wn.2d at 890 (quoting *Lidge*, 111 Wn.2d at 852 (quoting *Calderon*, 102 Wn.2d at 353)).

 Here, the trial court found that juvenile court jurisdiction would probably not have been maintained; therefore, Brandt was not prejudiced by the delay:

> [T]he Court finds that the Court hearing the remand motion would have unlikely kept juvenile jurisdiction over the Defendant because of his prior convictions; because he had been given a SSODA before; because juvenile services were provided to the Defendant of which he did not take full advantage; that the SSODA was revoked after a series of probation violations; that the Defendant spent time at the juvenile institution where more juvenile services were made available to him, but he did not appear to take advantage of those services either; that the Defendant violated his parole, which was revoked, and the Defendant was sent back to the juvenile institution; that the De-

fendant was released from the second stay at the juvenile institution close to becoming eighteen years of age.

Brandt does not challenge the factual findings. Instead, he contends that this was error because there is no authority for the trial court to consider "whether the juvenile court would have retained jurisdiction." This argument is without merit. In *State v. Schifferl*, 51 Wn. App. 268, 753 P.2d 549 (1988), Division One said, "The balancing test should also include review of whether or not the defendant is the type of offender that would have been tried in juvenile court." *Id.* at 273. And in *Frazier*, we stated, albeit in dicta, that "several courts have noted that an important factor in balancing the State's and defendant's interests is the likelihood of the juvenile court declining jurisdiction." *Frazier*, 82 Wn. App. at 592. We agree with the trial court that the prejudice to Brandt was slight because it was highly unlikely that the juvenile court would have maintained jurisdiction.

The State's interest, on the other hand, is compelling. Brandt had committed numerous acts of sexual misconduct with child victims from the time he was 12 years old. And, in spite of his incarcerations and the availability of treatment in juvenile institutions, he did not take advantage of treatment and violated the terms of his parole. The State's interest in protecting other child victims far outweighs Brandt's interest in having the option of juvenile court open to him. We conclude that Brandt has not shown that the pace of the police investigation violated his due process rights.

Affirmed.

SEINFELD and HUNT, JJ., concur.