[No. 16957-2-I.   Division One.   December 24, 1986.]

THE STATE OF WASHINGTON, *Respondent*, v. DENNIS MICHAEL ROBBERS, *Appellant*.

---

*Anne E. Roberts* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *James W. Leslie, Deputy,* for respondent.

COLEMAN, J.—Dennis M. Robbers appeals his conviction of four counts of delivery of a controlled substance, claiming that the trial court erred in denying his motion to dismiss for unjustified preaccusatorial delay that resulted in loss of juvenile court jurisdiction. We affirm.

From mid–March through mid–August 1984, the Issaquah Police Department conducted a large scale, undercover drug buying operation. Between May and August 1984, Robbers sold cocaine four times to undercover agents. The following is a sequence of events stipulated to by the parties at a pretrial hearing.

| May 17, 1984 | First purchase (count 3) |
| May 18, 1984 | Request to Washington State Crime Lab for analysis of material from first purchase |
| | Second purchase (count 4) |
| | Field test of material from second purchase confirming presence of |

| | |
|---|---|
| | cocaine |
| May 19, 1984 | Request to lab for analysis of material from second purchase |
| July 18, 1984 | Lab analysis of material from first and second purchases completed confirming presence of cocaine |
| August 3, 1984 | Third purchase (count 1) |
| August 8, 1984 | Request to lab for expedited analysis of material from third purchase |
| August 10, 1984 | Lab analysis of material from third purchase completed confirming presence of cocaine |
| August 16, 1984[1] | Fourth purchase (count 2); Robbers and 13 others arrested |
| August 22, 1984 | Lab receives request for analysis of material from fourth purchase |
| September 12, 1984 | Lab analysis of material from fourth purchase completed confirming presence of cocaine; lab report submitted for typing; results available by phone |
| September 25, 1984 | Lab report on material from fourth purchase typed and signed; postcard mailed to Issaquah Police Department indicating analysis completed |
| October 2, 1984 | Lab report on material from fourth purchase received by Issaquah police |
| October 10, 1984 | Case referred by police to King County prosecutor, juvenile division |
| October 15, 1984 | Robbers turns 18 years old; date of birth on documents is October 15, 1966 Case referral date–stamped by King County prosecutor, adult division |

Thirty-seven more arrests were made after August 16.

On August 17, 1984, the day after his arrest, Robbers signed a confession to the August 16 cocaine sale. At the top of the statement, his date of birth was entered as October 15, 1966, and on the same page, Robbers stated that he was 17 years old. The police did not consider appellant's age, however, until October 2, 1984, when they prepared the case for referral to the juvenile division of the prosecutor's office.[2] The case was referred to the prosecutor on October 10, 1984, and received in that office on October 15, 1984.

On January 10, 1985, Robbers was charged with four counts of delivery of a controlled substance. A pretrial hearing was held on May 1, 1985. Robbers moved to dismiss, claiming the 55-day delay between completing the police investigation on August 16, 1984, and referring it to the prosecutor on October 10, 1984, was unreasonable under King County Local Juvenile Court Rule 7.14(b). That rule authorizes the juvenile court to dismiss charges if a referral is not made within 2 weeks of an investigation. Further, Robbers argued that he had been prejudiced by loss of juvenile court jurisdiction as a result of the delay. The court found that the investigation was complete upon receipt of the lab report on October 2. The court held that the delay was not unreasonable since the charges arose out of a single, ongoing operation over a considerable period of time, and the police referral was reasonably prompt considering the volume and scope of the operation. On May 2, 1985, Robbers waived his right to a trial by jury, was tried, and found guilty as charged on all four counts of delivery of a controlled substance. The judgment and sentence was

---

[1]Although this transaction was not specifically recited in the stipulated facts, it was an undisputed fact and is included here for a clear chronology.

[2]The police delayed referral until they received the results of the lab analysis on October 2. They had not expedited the lab analysis for the fourth purchase of August 16 even though the lab analysis from the third purchase had been expedited to determine, through the quality of the cocaine, appellant's relationship to the source.

entered on July 1, 1985. This appeal followed.

■ To establish that preaccusatorial delay violated a defendant's right to due process, the defendant must show that the delay caused prejudice. In *State v. Calderon,* 102 Wn.2d 348, 684 P.2d 1293 (1984), our Supreme Court held that a delay in bringing charges that results in the loss of juvenile court jurisdiction is prima facie evidence of the required prejudice for a violation of due process. *Calderon,* at 353. Due process analysis, however, does not stop with the showing of prejudice. The court must consider the reasons for the State's delay and determine if the delay is justified. If the delay is justified, the court must balance the prejudice to the defendant against the State's interest and determine if the action complained of violates fundamental conceptions of justice.

> Simply establishing prejudice is not enough, however. To find a due process violation, the court must also consider the State's reasons for the delay. [*United States v.*] *Lovasco*[, 431 U.S. 783, 52 L. Ed. 2d 752, 97 S. Ct. 2044 (1977)]. If the State is able to justify the delay, the court must undertake a further balancing of the State's interest and the prejudice to the accused. *See United States v. Saunders,* 641 F.2d 659 (9th Cir. 1980). Ultimately, the test suggested by the United States Supreme Court is "whether the action complained of . . . violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions". *Lovasco,* at 790.

*Calderon,* at 353. The preaccusatorial delay in this case resulted in the loss of juvenile court jurisdiction. Therefore, this appeal presents only one issue: Whether the preaccusatorial delay was unreasonable or unjustified.

Appellant contends that the trial court's finding that the police investigation of count 2 was completed on October 2, 1984, was clearly erroneous. It is his contention that the entire undercover operation was completed on August 16, 1984, the day of Robbers' arrest, because no further investigation of Robbers or anyone else occurred after that date. Robbers signed a written confession on August 17. That confession included a statement of his age and his date of

birth; therefore, according to appellant, the police knew or should have known that he was a juvenile, for whom they must make a referral within 2 weeks or risk dismissal.

Appellant compares the facts of his case with the facts of *Calderon*. Like appellant, Calderon lost juvenile court jurisdiction because the police delayed referring his case until they received lab results. Appellant contends that this is the only similarity. The *Calderon* court's holding that Calderon's due process rights were not violated was anchored in the fact that the investigation was ongoing and that the police were proceeding on a hunch, not probable cause, when they submitted Calderon's prints to the lab. Appellant argues that in this case, unlike *Calderon,* the investigation was not ongoing. It ended on August 16. The police had evidence on that date to support three counts of delivery of a controlled substance and probable cause to support the fourth. Appellant asserts that the police deliberately ignored the effect of a delayed referral and undermined the legislative scheme to treat people under 18 years old under a separate rehabilitative system. We disagree.

We find sufficient evidence to support the finding of the trial court that the investigation was not over on August 16. Thirty–seven more arrests still had to be made. The lab report constituted critical evidence necessary for prosecution. Furthermore, as the trial court stated, the charges arose out of a single, ongoing investigation over an extended period of time. Considering the volume and scope of that investigation, the police acted promptly and reasonably upon its completion. Because all charges against Robbers could be properly joined under the criminal rules, it was not unreasonable to delay the referral until sufficient evidence had been obtained for all counts. Separate trials for defendants have never been favored in this state. *State v. Grisby,* 97 Wn.2d 493, 506, 647 P.2d 6 (1982), *cert. denied sub nom. Frazier v. Washington,* 459 U.S. 1211, 75 L. Ed. 2d 446, 103 S. Ct. 1205 (1983). Administrative and judicial efficiency were served by waiting for the last lab report before filing charges against Robbers.

Appellant cites *State v. Erickson,* 22 Wn. App. 38, 44, 587 P.2d 613 (1978) for the proposition that the State should proceed to prosecute once it has probable cause. Appellant has, however, misstated the holding in *Erickson. Erickson* was a case in which the defendant had been charged with other crimes, yet the State delayed charging a related offense arising out of the same criminal conduct for which they had probable cause. The court held that such action risks dismissal for failure to provide a speedy trial. Appellant's right to a speedy trial is not at issue here. Prosecutors have no duty to file charges as soon as probable cause exists; to impose such a duty could lead to unwarranted charges and added burdens for the accused. *United States v. Lovasco,* 431 U.S. 783, 791, 52 L. Ed 2d 752, 97 S. Ct. 2044, *reh'g denied,* 434 U.S. 881 (1977); *State v. Boseck,* 45 Wn. App. 62, 68, 723 P.2d 1182 (1986).

Appellant further contends that the police had expedited the lab analysis for count 3 and could have done so for count 2. Had they done so, the return would have been within 2 weeks and the charge referred in time for juvenile court jurisdiction. Additionally, the police could have received an oral verification of the final lab report as early as September 12, 1984, almost 1 full month before the police referred appellant's case for prosecution.

It is undisputed that the investigation of appellant and 49 other suspects followed standard police procedures. The fact that the Issaquah police did not treat appellant differently because he was a juvenile is not an indication of negligent or deliberate preaccusatorial delay. Special procedures for juvenile suspects are not required in Washington. "Absent extraordinary circumstances, it is appropriate that juvenile offenses be managed in the same manner as are adult crimes. We are reluctant to interfere with standard investigatory procedures by requiring special treatment for juvenile suspects." *Calderon,* at 354. Furthermore, the lab analysis of the fourth purchase was an essential element of the investigation. Thus, because the investigation was ongoing, standard operating procedures were followed, and

the police treated appellant the same as all other suspects in the 4–month investigation, the police delay in charging appellant was neither deliberate nor negligent.

Appellant argues that once the trial court had determined that the delay was justified, it did not apply the balancing test laid out in *Calderon*. The court did not, according to appellant, balance the interest of the State against the prejudice to the defendant. We find that the trial court adequately set forth its reasons. Sufficient evidence to successfully complete an undercover drug investigation is a substantial state interest that outweighs the defendant's loss of juvenile court jurisdiction. The delay did not violate fundamental conceptions of justice.

The preaccusatorial delay was not deliberate or negligent. The State had sufficient reason for that delay to outweigh any prejudice to the defendant.

Affirmed.

SCHOLFIELD, C.J., and SWANSON, J., concur.

Review denied by Supreme Court March 31, 1987.