[Nos. 17607–2–I; 17712–5–I. Division One. September 14, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. CHARLES
RAY LIDGE, ET AL, *Appellants.*

*John Christiansen* of *Washington Appellate Defender
Association,* for appellants.

*Norm Maleng, Prosecuting Attorney,* and *Lisa Roehl* and *David Vogel, Deputies,* for respondent.

PEKELIS, J.—Charles Ray Lidge and Devon Eskridge appeal their convictions for second degree burglary and possession of stolen property in the third degree, in violation of RCW 9A.52.030 and 9A.56.170, respectively. Their cases have been consolidated here. Each contends that the trial court erred in (1) holding that the police had probable cause to arrest; (2) denying their motions to suppress evidence discovered as a fruit of the arrest; and (3) denying their motions to dismiss due to insufficiency of the evidence. Eskridge additionally contends that the trial court erred in holding that it had jurisdiction over him as an adult offender, arguing that the delay between the date of the alleged offense and the filing of charges against him, during which Eskridge turned 18 years of age, was unjustifiable. We affirm Lidge's conviction and reverse Eskridge's conviction because the State cannot justify its delay in not charging him in juvenile court.

On May 10, 1985, Devon Eskridge, Charles Lidge and Roy Thomas were arrested for theft. Lidge and Thomas were charged on May 13 with second degree burglary. No charges were filed at that time against Eskridge, a juvenile, and he was released 72 hours after his arrest, pursuant to JuCR 7.3(a). On June 28, 1985, however, after Eskridge's 18th birthday on June 3, an amended information was filed in superior court which added Eskridge as a codefendant in the information charging Thomas and Lidge.[1]

Eskridge and Lidge moved prior to trial to suppress all evidence obtained as a result of their arrests, claiming that they were made without probable cause. At the suppression hearing, the arresting officer, Miner, and an officer who investigated the scene of the crime, Hales, testified that they received a dispatch report that three "suspicious"

---

[1]During trial, a second amended information was filed, adding charges of third degree possession of stolen property.

black males were trying to distract the clerk at Alston's Hallmark shop in Redmond and that the three had left the scene in an older model blue Ford Thunderbird. Sometime later Miner received another report advising him that the employees of Alston's had discovered that a theft had occurred and giving descriptions of the three suspects. He then noticed a blue Ford Thunderbird with three black males in it and pulled the car over. He questioned the driver, later identified as Lidge, who acknowledged having been at Alston's.

Miner then received a further radio report from Hales, who had arrived at Alston's and was conducting an investigation there. Hales reported that forced entry had been made into a cash drawer in a back room and relayed further descriptions of the suspects. Hales also reported that the employees believed the three had acted in concert, entering together and then moving in different directions, two of them drawing the clerks to the two front corners of the store, and the third disappearing in the back. Meanwhile, backup officers, who had arrived to assist Miner, questioned Eskridge and Thomas, both of whom also admitted having been at Alston's. At that point, all three were arrested.

The motion to suppress was denied.

Eskridge also made a pretrial motion to dismiss on the grounds of preaccusatorial delay which had caused the juvenile court to lose jurisdiction over him. Linda Walton, Assistant Chief Deputy Prosecutor, head of the juvenile division, testified for the State that her review of Eskridge's file indicated that her office received a copy of a preliminary police report on May 13, 1985. The case was screened on that day by a deputy prosecutor who decided that the case was not sufficient for filing at that time. On May 20, "more information" was received from the Redmond Police Department. A deputy prosecutor rescreened the case on May 21, 13 days before Eskridge's 18th birthday, and concluded it was sufficient to file.

Walton testified that the administrative processing of a case from the time it is found sufficient to the date of

arraignment takes a minimum of 3 weeks for an out–of–custody defendant. She testified that typing and reviewing the information and assigning the case to a deputy takes 7 days, and that under the applicable statute and court rules (which she did not cite), the State must give a defendant 14 days' notice from the date of filing the information and issuance of a summons to the date of arraignment. Because of these time requirements, the deputy prosecutor made the decision not to begin the process, and thus the case was not filed in juvenile court at all. Walton testified that this decision was in accordance with usual and customary administrative procedures of the juvenile prosecutor's office. Although it is possible to "rush file" cases, the prosecutor's office utilizes its limited resources to do so in cases of persons in custody whom the office does not want to have released and cannot take special measures to arraign out–of–custody individuals simply because they are approaching their 18th birthday.

The court held that the State's conduct in delaying the filing of charges was prejudicial, but determined that the conduct was neither deliberate nor intentional because it was "in accordance with its normal usual procedures involving the filing and processing of charges against juveniles." The court also concluded the State had no burden to rush the filing of charges based on age. Accordingly, Eskridge's motion to dismiss was denied.

The testimony at trial was that three black males entered the store together on May 10 at around 5 p.m. Two of them, identified as Lidge and Eskridge, approached the two clerks on duty and asked for help in finding gifts or cards, but appeared uninterested in what was shown to them. Meanwhile, the third man, Thomas, disappeared from view, but one of the clerks came upon him suddenly near the back entrance of the store, and he seemed startled. The three men were in the store for between 15 and 30 minutes. Both clerks became suspicious. One had the impression she was being drawn away from the register, and the other went to check the back room and noticed that a bathroom door

was ajar. The three men then left the store together. After they left, a cash drawer was found to have been pried open in the back room. Thomas' fingerprints were later found on the drawer.

An employee in a neighboring store testified that when the three men left Alston's, Lidge stayed in front of the store while the other two went back to the car. Thomas got in and appeared to be shoving something into the car and "thrashing around", while Eskridge stood outside the car and looked around.

When the police stopped their vehicle, Lidge consented to a search of the car. Dollar bills and rolled coins, some with Alston's name printed on them, were found shoved down between and behind the seats. A long standard–head screwdriver was also found. Eight dollar bills folded in the same manner as those found in the car were found in Lidge's wallet, and nine similarly folded bills were found in Eskridge's sock. After the three were placed in holding cells, an officer overheard Eskridge angrily telling Lidge that he was stupid to let the police search the car.

At the close of the trial, Eskridge and Lidge moved to dismiss both counts on the grounds of insufficient evidence. The motions were denied. The jury found both Lidge and Eskridge guilty on both counts.

# I
## Validity of Arrest

Eskridge and Lidge assert that Miner did not have probable cause to arrest them and that therefore all evidence resulting from the arrests should have been suppressed. They contend that because there was no evidence specifically tying them to the act of breaking open the cash drawer, there was not probable cause to arrest them.

 Probable cause to arrest exists

> "where the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in a belief that an offense has been . . . committed."

*State v. Thornton,* 41 Wn. App. 506, 514, 705 P.2d 271, *review denied,* 104 Wn.2d 1022 (1985) (quoting *State v. Fricks,* 91 Wn.2d 391, 398, 588 P.2d 1328 (1979)). The probable cause test is one of reasonableness. *State v. Kirvin,* 37 Wn. App. 452, 456, 682 P.2d 919 (quoting *State v. Scott,* 93 Wn.2d 7, 10, 604 P.2d 943, *cert. denied,* 446 U.S. 920, 64 L. Ed. 2d 275, 100 S. Ct. 1857 (1980)), *review denied,* 102 Wn.2d 1019 (1984). The inquiry is based on the factual circumstances and practical considerations governing the actions of reasonable and prudent people in their normal, everyday affairs. *State v. Dorsey,* 40 Wn. App. 459, 468–69, 698 P.2d 1109, *review denied,* 104 Wn.2d 1010 (1985).

In analyzing this question, this court may consider all of the facts known to Miner as a result of (1) the initial call to the police, which included the fact that three men had been acting suspiciously at Alston's, and a description of their car; (2) the subsequent radio dispatch, which included more detailed descriptions of the men and the fact that a theft had occurred; (3) the information given to the officers by the defendants upon questioning, including their admission that they had been in Alston's, and (4) Officer Hales' subsequent radio transmission, including information that the cash drawer had been pried open, the store employees' statements that the three men appeared to be acting in concert, and further descriptions. There is no question that the information relayed to Miner was sufficient to arrest all three on probable cause.

Since the arrests were based on probable cause, it was proper for the trial court to deny the defendants' motion to suppress the evidence obtained following the arrest.

## II
### SUFFICIENCY OF EVIDENCE

We turn next to Eskridge's and Lidge's assertion that the trial court erred in denying their motion to dismiss for insufficiency of the evidence. Lidge and Eskridge assert that the evidence showed only that they were present at the

scene of a crime, but did not show that they had any unlawful purpose or criminal intent. They claim that their behavior was merely that of any innocent shopper who might enter a store with a companion who proves dishonest.

The appropriate test for determining sufficiency of the evidence to support a criminal conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime *beyond a reasonable doubt.'" State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979)). Mere presence at the commission of a crime, however, does not subject a defendant to accomplice liability. *State v. Rotunno,* 95 Wn.2d 931, 933, 631 P.2d 951 (1981).[2]

In this case we have much more than "mere presence." The evidence showed that Lidge and Eskridge entered Alston's with Thomas and purposefully distracted the attention of the clerks while Thomas broke into the cash drawer in the rear. Further, Eskridge stood lookout for Thomas when he hid the money in Lidge's car. Stolen money was found in Lidge's car and in his wallet, as well as in Eskridge's socks. Under these facts, the evidence was sufficient to find the essential elements of the crimes of both burglary and possession of stolen property beyond a reasonable doubt. Thus, the trial court properly denied the defendants' motion to dismiss.

Having resolved in the State's favor all of the errors raised by Lidge, we affirm his conviction.

### III
#### PREACCUSATORIAL DELAY

We turn next to the final assignment of error, asserted only by Eskridge. He contends that his due process rights

---

[2]The elements of an offense remain the same whether the accused is charged as a principal or an accomplice. *State v. Gamboa,* 38 Wn. App. 409, 413–14, 685 P.2d 643 (1984).

were violated due to preaccusatorial delay which resulted in the loss of juvenile court jurisdiction.

Juvenile court jurisdiction ends when a youth becomes 18, unless, prior to that birthday, juvenile proceedings are pending and an order has been entered extending jurisdiction beyond that birthday. RCW 13.40.300(1)(a). In *State v. Calderon*, 102 Wn.2d 348, 352, 684 P.2d 1293 (1984), our Supreme Court recognized the numerous benefits offered a defendant by the juvenile court. *Calderon*, 102 Wn.2d at 352. Thus, the court held that when a delay in bringing charges prevents the juvenile court from assuming jurisdiction, a defendant has established "the minimal prerequisite of prejudice." *Calderon*, 102 Wn.2d at 353. To find a due process violation, however, the court must also consider the State's reasons for the delay. The State must show that the delay was neither intentional nor negligent. If the State is able to justify the delay, the court must then balance the State's interest against the prejudice to the accused in determining whether a due process violation has occurred. *Calderon*, 102 Wn.2d at 353 (citing *United States v. Lovasco*, 431 U.S. 783, 52 L. Ed. 2d 752, 97 S. Ct. 2044 (1977)).

Appellate review addresses the question of whether the trial court's findings are supported by substantial evidence and whether the findings support the conclusions of law. *Willener v. Sweeting*, 107 Wn.2d 388, 393, 730 P.2d 45 (1986); *Morgan v. Prudential Ins. Co. of Am.*, 86 Wn.2d 432, 437, 545 P.2d 1193 (1976). Although a trial court's factual findings are of great significance to a reviewing court, the appellate court must independently review the record in order to determine whether a fundamental constitutional right has been denied. *State v. Boseck*, 45 Wn. App. 62, 65, 723 P.2d 1182 (1986) (citing *State v. Daugherty*, 94 Wn.2d 263, 269, 616 P.2d 649 (1980), *cert. denied*, 450 U.S. 958 (1981)).

The trial court's findings and conclusions essentially accepted the testimony of Assistant Chief Deputy Walton that (1) the case was deemed "not legally sufficient" by an

unspecified deputy prosecutor reviewing the case on May 13, 1985; (2) on May 20, "more information"[3] was received from the police which led a deputy prosecuting attorney to conclude on May 21 that the case was then legally sufficient; but (3) because the prosecuting attorney's office needs "at least 3 weeks" from the time completed police reports are received to the date of arraignment,[4] and Eskridge's 18th birthday was less than 3 weeks away, the State did not have to file the case in juvenile court at all. The trial court concluded that because the State acted in accordance with its normal procedures, the delay was neither deliberate nor negligent.

■ We conclude that the trial court's findings do not support its conclusion that the delay was neither intentional nor negligent. First, Walton's testimony, which was based solely on her review of the file, did no more than establish that her office followed its usual procedure. The fact that the prosecuting attorney's office made a determination on the legal sufficiency of the case does not answer the question of whether that determination was made negligently. Put another way, the fact that the State acted procedurally properly begs the question of whether the resulting delay was justifiable. We know of no case, and none is cited, where conclusory testimony that a case was "not sufficient" was found, standing alone, to satisfy the burden placed on the State by *Calderon.*

In *Calderon,* for example, the State explained in particular detail how a delay in obtaining lab analyses of the defendant's fingerprints resulted from a backlog of serious homicide cases, an assignment of robbery cases previously handled by another lab, and a sick employee, and that the lab had established a priority system to resolve the backlog.

---

[3]Although finding of fact 1(c) states that "several witness statements" were received on that date, Ms. Walton did not so state and nothing in the record supports this finding of fact.

[4]The date of arraignment is critical because it is the first opportunity the court has to enter an order extending jurisdiction.

*Calderon,* 102 Wn.2d at 354. Similarly, in *State v. Robbers,* 46 Wn. App. 558, 731 P.2d 522 (1986), *review denied,* 108 Wn.2d 1005 (1987), the State offered extensive evidence demonstrating that it was involved in an ongoing large–scale undercover drug buying operation that involved numerous additional arrests which had to be synchronized with the defendant's.[5] In *Boseck,* 45 Wn. App. at 67, the State explained that its charging delay was justified by a need to proceed sequentially against others involved in the same crime in order to obtain the testimony of the only witness who could implicate the defendant.

By comparison, the State's explanation in Eskridge's case is woefully inadequate. First, the State failed to offer any evidence of *what* information it lacked on May 13 or what additional information it later received which made the case "sufficient." A comparison of the original certification for determination of probable cause appended to the first information, with the supplemental certification appended to the amended information in which Eskridge was charged, reveals no new investigatory evidence that would justify a delay in charging Eskridge. Second, since the State *did* file identical charges against Eskridge's adult codefendants on May 13, the same day it claims the case was not ready to be filed against Eskridge, the State's conclusion that Eskridge's case was "not sufficient" cries out for explanation.[6]

Thus, we conclude that the State has failed to present facts sufficient to justify its delay, *i.e.,* facts rebutting an inference of deliberate or negligent causes for the delay. We therefore hold that Eskridge's due process rights were

---

[5]The State further showed that it had treated the adult suspects the same as the juvenile suspect in not taking special measures to expedite the return of certain lab reports relevant to the juvenile defendant's case.

[6]From our review of the record, it appears that all the witnesses were known to the police on the day of the arrests and that the information they provided was sufficient to charge Eskridge's codefendants.

violated and that his conviction must be reversed and the case dismissed.[7]

WEBSTER and MUNSON, JJ., concur.

Review granted by Supreme Court January 7, 1988.

---

[7]Because of our holding, we need not address the issue of whether the trial court's finding that a minimum of 3 weeks is necessary from receipt of "a completed police report" to arraignment is supported by substantial evidence. The court's finding of fact adopts Walton's testimony that (1) a minimum of 7 days is necessary for in–office typing and review of the information by the deputy filing the case, and (2) 14 days' notice is required prior to arraignment. The findings cite RCW 13.40.100 and JuCR 7.5 for this 14–day notice requirement. We have perused RCW 13.40.100 and JuCR 7.5 and are unable to find the 14–day notice requirement to which Walton referred. Local Juvenile Court Rule 7.6(a)(1) does require that cases be set for arraignment *no later than* 2 weeks after filing for out–of–custody defendants, but does not preclude an earlier setting. While we agree that the prosecuting attorney need not "rush file" on an individual simply because he is approaching his 18th birthday, *see State v. Anderson,* 46 Wn. App. 565, 569–70, 731 P.2d 519 (1986), *review denied,* 108 Wn.2d 1005 (1987), the State cannot justify its time frames on an erroneous understanding of applicable legal requirements.