[No. 18084-7-II.    Division Two.    July 12, 1996.]

THE STATE OF WASHINGTON, *Appellant*, v. JASON
FRAZIER, *Respondent*.

*Russell C. Hauge, Prosecuting Attorney*, and *Pamela B. Loginsky, Deputy*, for appellant.

*Randall Keys*, for respondent.

HOUGHTON, A.C.J. — The State appeals a trial court's dismissal of residential burglary charges against Jason Frazier for preaccusatorial delay, arguing that only an intentional delay can justify dismissal. Because our Supreme Court has held that negligence by the State can justify dismissal, and because the record amply supports the trial court's determination that the State was negligent, and further, gave no credible justification for the delay, we affirm the dismissal. The State also appeals the trial court's denial of its motion for sanctions against defense counsel for refusing to agree to a continuance.

Because we find no abuse of discretion, we also affirm the denial of sanctions.

## FACTS AND PROCEDURAL HISTORY

Between April 20 and June 5, 1992, a series of at least seven burglaries, most residential, was committed in Kitsap County. Some of the stolen items were weapons. On June 7, 1992, a tip led to the discovery of some stolen guns in the possession of Glen Chandler. In the next several days, various individuals were implicated and confessions were obtained from most of those individuals.

On June 10, 1992, Frazier confessed to Kitsap County Sheriff's Deputy Ronald Trogdon to being involved in three residential burglaries while he was 17 years old.[1] On November 19, 1993, 17 months later, Frazier was charged as an adult with one of those burglaries.[2] Frazier moved to dismiss the charges based upon unjustifiable preaccusatorial delay, which denied him juvenile court jurisdiction, because he turned 18 years old in the interim.[3]

On March 10, 1994, the trial court rendered its oral ruling, finding that the State had failed to provide a credible explanation for either the eight-week delay between Deputy Trogdon's completion of the report and its receipt by the juvenile court, or the eight-week delay between the prosecutor's receipt of the report and Frazier's eighteenth birthday. The trial court concluded that the State's delay was negligent and unjustified. The trial court went on, however, to balance the State's interest in prosecuting Frazier against Frazier's (and society's) interest in ensur-

---

[1]Deputy Trogdon's report noted that Frazier was "cleared [] with confession" on June 8, 1992; however, he later testified that he obtained Frazier's confession "approximately June 10th of [19]92."

[2]The statute of limitations for residential burglary, RCW 9A.52.025(1), is three years. RCW 9A.04.080(g).

[3]Frazier also filed a motion to dismiss based on collateral estoppel. The State objected to the timeliness of this motion and then filed a motion for sanctions, seeking $297.44 for the expense it incurred for overtime pay and computer research charges in responding to Frazier's motion over a weekend.

ing due process to persons accused of crimes. The trial court concluded that the State had not met its responsibility to provide Frazier "the full protection of the law" and, therefore, dismissed the case against Frazier.

On March 15, 1994, the trial court entered the following findings of fact and conclusions of law, granting Frazier's motion to dismiss due to loss of juvenile court jurisdiction:

## FINDINGS OF FACT

### I.

In June of 1992, [] Deputy [] Trogdon was the lead detective in reference to the investigation of a series of burglaries occurring between April and June of 1992.

### II.

These burglaries involved as many as ten (10) juvenile suspects.

### III.

On June 10, 1992, Deputy Trogdon interviewed [Frazier], who confessed to committing three burglaries on June 5, 1992.

### IV.

On June 15, 1992, Deputy Trogdon completed his comprehensive report on the entire series of burglaries and submitted it to the proper people for handling.

### V.

Deputy Trogdon's report included individual incident reports on all related burglaries and was organized under one case file number, CF5-5922, pursuant to the Uniform Crime Code numbering system.

### VI.

Deputy Trogdon's report was placed in a manilla envelope, which listed the individual incident report numbers . . . all [of] the juvenile suspects on the outside.

## VII.

For reasons not explained by the State, the juvenile court did not receive this report, or any part of it, until August 18, 1992.

## VIII.

Pursuant to standard procedures, this report, or at least a part of it, was sent from juvenile court to the Victim[-]Witness Division of the Prosecuting Attorney's Office in Kitsap County on August 25, 1992, arriving there on September 1, 1992.

## IX.

For reasons not explained by the State, it appears that no one in the Kitsap County Prosecuting Attorney's Office looked at this report until mid-November of 1992, after [Frazier] had already turned eighteen (18) years of age on October 28, 1992.

## X.

About one year later, on November 19, 1993, [Frazier] was charged in Kitsap County Superior (adult) Court with Residential Burglary, one of the crimes to which he confessed on June 10, 1992.

On the basis of the foregoing Findings of Fact, the court [made] the following:

## CONCLUSIONS OF LAW

### I.

The court has jurisdiction over the subject matter and the parties in this case.

### II.

[Frazier] is presumed to have been prejudiced by the State's having lost juvenile court jurisdiction over him.

### III.

The State is unable to provide any credible explanation for

the delay between the filing of the police report on June 15, 1992 and mid-November 1992, when a deputy prosecuting attorney appears to have first reviewed the report.

## IV.

The unexplained delay between June 15, 1992 and mid-November 1992 was without justification.

## V.

The State was negligent in the discharge of its duties with regard to the handling of this case.

## VI.

The State's interest in pursuing this prosecution consists of many factors; to wit:

(a) To prosecute those accused of crime and to hold people accountable for crimes;

(b) To guarantee that we are a just society, bearing in mind that the United States [C]onstitution places a primary value on individual freedom; and

(c) To see that the people are protected by the law and by due process, which includes the prompt adjudication of juveniles suspected of a criminal conduct.

## VII.

[Frazier] is prejudiced by an adult prosecution by:

(a) The enormously greater period of incarceration he would face if incarcerated in the adult system than in the juvenile system; [and]

(b) Having to serve this time in the state prison system[.]

## VIII.

On balance, [Frazier] is prejudiced in this case to the point where this prosecution must be dismissed.

The trial court denied Frazier's motion to dismiss based

upon collateral estoppel[4] and the State's motion for sanctions.

At the March 9-10, 1994 hearing on Frazier's motion to dismiss, the trial court heard the following testimony supporting its findings and conclusions. Deputy Trogdon testified that he and Assistant Chief Criminal Deputy Prosecuting Attorney Irene Asai discussed the fact that other suspects were involved in the investigation. On June 15, 1992, Deputy Trogdon sent his investigation report (about an inch thick) to the juvenile court.[5]

Deputy Trogdon testified that between the time the report was filed and early August 1992, at least two verbal requests were made for additional copies of the complete report, but he did not know who made the requests. Supervising Lieutenant Lutes testified that he received at least four verbal requests for copies of the file. He testified that such requests usually came from the prosecutor's office, but he was not sure who made these requests.

Supervising Lieutenant Lutes also indicated that deputy prosecutors generally made written requests when they wanted additional investigation to be done on a case. Asai also testified that written requests were made when more information was needed. Deputy Trogdon testified that the prosecutor's office made no requests for additional investigation in Frazier's case.

Carol Ann Zetzsche, a secretary with the Kitsap County juvenile court, testified that her department received the

---

[4]The trial court denied Frazier's collateral estoppel motion because there was insufficient similarity of facts between Frazier's case and the case he relied upon, *State v. Chandler*, Kitsap County Superior Court Cause No. 93-1-00992-3. The *Chandler* case involved another of the individuals prosecuted for this series of burglaries and was dismissed for preaccusatorial delay.

[5]There is some dispute about when Deputy Trogdon's report was finished and sent to juvenile court. Deputy Trogdon testified that the report was placed in his supervisor's, Lieutenant Lutes', basket on June 15, 1992; however, the State's response to Frazier's motion to dismiss indicates that the investigation was not completed until July 7, 1992, or mid-July 1992. Deputy Trogdon also testified that the last of the substantive investigatory reports was filed by the end of July, and then stated that the last of the "major reports" was filed on July 7, 1992. Supervising Lieutenant Lutes testified that he thought the file was closed on July 8, 1992.

Frazier file on August 18, 1992. She entered the information on Frazier into the JUVIS computer system on August 25, 1992. Zetzsche testified that she usually enters the sheriff's reports into the system within five days of receiving them. After the reports were entered, someone from the prosecutor's office victim-witness division picked up the reports. She also testified that usually "a charging [came] back" from the prosecutor's office within 7 to 10 days from the time her office completed entry of the information.

Maureen Morrow, the prosecutor's victim-witness specialist, testified that she usually transferred the cases to the deputy prosecutor within two days of receiving them from juvenile court. Deputy Trogdon's report was sent to the victim-witness division of the prosecutor's office on August 25, 1992, and was marked received September 1, 1992. The record does not show any other action on the report before Frazier's eighteenth birthday on October 28, 1992.

Kymberly Knechtel was a deputy prosecutor in the juvenile division until November 12, 1992, and was the first deputy prosecutor assigned to Frazier's case. She testified about her priority scheme for the majority of her work.[6] Knechtel admitted that, to avoid inconsistency, her supervisor (Asai) had a "verbal policy" of attempting to coordinate files on multiple suspects in multiple crimes.[7] Knechtel also admitted that it was likely that she never made a charging decision in the Frazier case before leaving her employment with the prosecutor's office on November 12, 1992.

Asai testified that no charges were filed during deputy

---

[6]Knechtel testified that, as a deputy prosecutor, she was responsible for charging and prosecuting criminal cases; investigating and representing the Department of Social & Health Services in termination and dependency hearings; and appearing at involuntary commitment proceedings and shelter case hearings. Asai testified that priority was given to (1) dependency petitions, (2) in-custody juveniles, (3) crimes against persons, and (4) crimes against property. She testified that charging priority followed case priority and that her office had no special charging procedure for individuals who were nearing 18.

[7]Asai testified that she did not have such a policy.

prosecutor vacations, thus delaying the charging process. She also testified that, after Frazier's eighteenth birthday, Deputy Prosecutor Sachia Stonefeld found insufficient evidence in the report to charge Frazier with burglary in the first degree; therefore, she "declined prosecution" on April 6, 1993.[8] Asai testified that there was not enough information to charge Frazier in the report Knechtel received on Frazier.

The trial court engaged Asai in a colloquy reciting the history of her office's treatment of the Frazier file: the office received the file September 1, 1992; the office requested more information from the sheriff's department on November 13, 1992 (Frazier had turned 18 on October 28); deputy prosecutor Jeff Wolf received an additional report on November 24, 1992; the office requested additional information from the sheriff on December 22, 1992; the office sent a second request for more information on January 22, 1993; the office made a note that there was "NO RESPONSE TO MEMOS," apparently indicating that the sheriff did not provide the requested information; victim-witness specialist, Leslie Myette, noted that she "OBTAINED ALL FOLLOW-UP FROM CASE FILE" on June 15, 1993; and Asai assigned another deputy prosecutor to the case in August 1993. No written requests for additional information or investigation are in Frazier's file.

Asai also testified that a two-month delay in charging would not be unusual, particularly in the period between June and October, 1992. Additionally, deputy prosecutor Kevin Kelly testified that delays in charging up to a year were common, particularly in drug-related cases, because of delays at the crime laboratory and because of the time-lag for receiving follow-up information on the cases. Similar testimony was presented through deputy prosecutor Wolf. Wolf also testified that he did not recall stating that it was unlikely for a case to remain uncharged for two to three months. Frazier's investigator, Robert Sousa,

---

[8]The State asserts the prosecutor's office did not receive the complete case file on all the burglaries and suspects until June 1993.

however, testified that Wolf said a two-month to three-month delay was "very unlikely."

■ The State appealed the trial court's Finding of Fact 9 and Conclusions of Law 3, 4, 5, and 8, its order dismissing prosecution, and its order denying sanctions against defense counsel. Frazier cross-appealed the trial court's denial of his motion to dismiss based upon collateral estoppel.[9]

## ANALYSIS

### A. Preaccusatorial Delay

■■ Although no constitutional right to juvenile court jurisdiction exists, the state and federal Supreme Courts have determined that preaccusatorial delay may violate due process under certain narrowly prescribed circumstances. *See, e.g., United States v. Lovasco*, 431 U.S. 783, 97 S. Ct. 2044, 52 L. Ed. 2d 752 (1977); *State v. Dixon*, 114 Wn.2d 857, 860, 792 P.2d 137 (1990).[10] In order to determine whether preaccusatorial delay violates due process where the delay leads to a loss in juvenile court jurisdiction, our Supreme Court has developed the following three-step test from *Lovasco*:

> (1) the defendant must show prejudice resulting from the delay; (2) the court must consider the reasons for the delay; and (3) if the State can justify the delay, the court will engage in balancing the State's interest against the prejudice to the accused.

*State v. Warner*, 125 Wn.2d 876, 889, 889 P.2d 479

---

[9]Although the cross appeal was timely filed, Frazier did not brief the issue. Issues not supported by reasoned argument will not be considered on appeal. *State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992). Therefore, we do not address collateral estoppel.

[10]Anticipating that Frazier would argue that Washington Const. art. I § 3 provides broader due process protection than the U. S. Constitution, the State engaged in a *Gunwall* analysis. *See State v. Gunwall*, 106 Wn.2d 54, 61-62, 720 P.2d 808, 76 A.L.R.4th 517 (1986) (laying out the six factors that must be briefed before an appellate court will consider whether the state constitution provides broader protection than the federal constitution). Frazier does not make such an argument; therefore, we do not address the issue.

(1995) (citing *Dixon*, 114 Wn.2d at 860 (citing *Lovasco*, 431 U.S. at 783)). When balancing the State's interest against the prejudice to the accused, the ultimate issue is " 'whether the action complained of . . . violates those "fundamental conceptions of justice which lie at the base of our civil and political institutions." ' " *Warner*, 125 Wn.2d at 890 (quoting *State v. Lidge*, 111 Wn.2d 845, 852, 765 P.2d 1292 (1989) (quoting *State v. Calderon*, 102 Wn.2d 348, 353, 684 P.2d 1293 (1984))).

■ ■ Nonetheless, the State is given a great deal of discretion over the charging decision, and courts may "infringe upon prosecutorial discretion only where reasonable minds would concur that the delay was unwarranted." *Dixon*, 114 Wn.2d at 862-63.[11] Moreover, the State is not required to establish special procedures for processing juveniles nearing their eighteenth birthdays. *See, e.g., State v. Alvin*, 109 Wn.2d 602, 602-05, 746 P.2d 807 (1987); *Calderon*, 102 Wn.2d at 354. "To date, Washington courts have never vacated a conviction due to a loss of juvenile court jurisdiction." *Dixon*, 114 Wn.2d at 864 (additional citations omitted).

■ The trial court correctly concluded that Frazier met the initial requirement of showing prejudice from his loss of juvenile court jurisdiction. Prejudice is presumed when

---

[11]In *Warner*, the Supreme Court listed the following legitimate reasons for a delay in filing charges: (1) "sequential prosecution in order to secure the testimony of a codefendant" (*Dixon*, 114 Wn.2d at 861; *State v. Boseck*, 45 Wn. App. 62, 67, 723 P.2d 1182 (1986)); (2) "waiting for lab results because of backlog at state crime lab" (*Calderon*, 102 Wn.2d at 354); (3) 55-day delay between confession and filing during "ongoing large scale undercover drug buying operation" (*State v. Robbers*, 46 Wn. App. 558, 564-65, 731 P.2d 522 (1986), *review denied*, 108 Wn.2d 1005 (1987)); and (4) 1.5-month delay between signed confession and filing due to "routine administrative practices such as vacation time, compensation time, and training time" (*State v. Alvin*, 109 Wn.2d 602, 605-06, 746 P.2d 807 (1987)). *Warner*, 125 Wn.2d at 890 n.7. In addition, the courts have found no unreasonable delay for a failure to file when (1) a police referral was received by the State 15 days prior to the defendant's eighteenth birthday (*State v. Anderson*, 46 Wn. App. 565, 569-70, 731 P.2d 519 (1986), *review denied*, 108 Wn.2d 1005 (1987)); and (2) the defendant was arrested 23 days before his eighteenth birthday, the State requested additional investigation 20 days before the birthday, the investigation was completed and received 13 days before the birthday, but there was not enough time left before the birthday to file charges and arraign the defendant (*Lidge*, 111 Wn.2d at 845).

juvenile court jurisdiction is lost. *Dixon,* 114 Wn.2d at 861.

■■ The second step of the test requires the State to come forward with some explanation of the reason for the delay. The trial court first found that the State failed to explain the delay between Deputy Trogdon's completion of the report on June 15, 1992, and its receipt by the juvenile court on August 18, 1992. The State has not assigned error to these findings, so they are verities here. *State v. Hill,* 123 Wn.2d 641, 644, 870 P.2d 313 (1994) (additional citation omitted). While the State assigns error to Conclusion of Law 3, unchallenged Findings of Fact 4 and 7 amply support the conclusion for the period between June 15 and August 18.[12]

■ In addition, the trial court found that the State did not explain why no one at the prosecutor's office reviewed Frazier's file between September 1 and November 13, 1992. The State challenges this finding. Our review of the record, however, reveals that this finding is supported by substantial evidence. The prosecutor's witnesses testified regarding the general operations of the office: that it was overworked and understaffed and that the County had refused to increase funding for additional staff. The State provided no explanation, however, for its handling of Frazier's file. In fact, the prosecutor's witnesses testified that they did not remember Frazier's file.

By contrast, in other preaccusatorial delay cases the State has provided testimony explaining the specific reasons for the delay in filing. In *Alvin,* the State presented evidence of exactly how the five-month delay between a confession and charging occurred: the detective investigated, took a brief leave for training, took a short vacation, and took a few weeks to complete the report. *Alvin,* 109 Wn.2d at 603. The Supreme Court found no evidence that such handling was unusual, unreasonable, or

---

[12]The record shows that these findings are also supported by substantial evidence.

unjustified. *Alvin*, 109 Wn.2d at 605-06. In *Schifferl*, the State admitted it was negligent in failing to properly handle the file, but the court found that mere clerical errors by police department personnel were insufficient to justify dismissal. *State v. Schifferl*, 51 Wn. App. 268, 273-74, 753 P.2d 549 (1988). In *Robbers*, the prosecutor showed that the delay in charging was justifiable due to an ongoing investigation. *State v. Robbers*, 46 Wn. App. 558, 565, 731 P.2d 522 (1986), *review denied*, 108 Wn.2d 1005 (1987).

Here, the trial court was given no explanation of what happened to Frazier's file. Moreover, it did not find the State's evidence credible.[13] The evidence shows a completely unexplained two-month disappearance of the file and the prosecutor's unexplained failure to look at the file for two more months. The trial court did not err in finding that the State provided no credible explanation for its delayed handling of Frazier's case.

If the State provides a reason for the delay, the trial court must examine whether the reason is justified. Our Supreme Court has recognized two circumstances when a delay can violate due process and justify vacating a conviction: "(1) an intentional delay by the State to circumvent the juvenile justice system will violate due process and (2) a negligent delay *may* violate due process." *Warner*, 125 Wn.2d at 890 (citing *Lidge*, 111 Wn.2d at 848). The third step, balancing the State's interest against the prejudice to the accused, is undertaken only when a justification is presented.

The State appears to concede that the delay was negligent, proceeding directly to its argument that only an intentional delay violates due process. The State relies

[13]Credibility is a factual question. *Fisher Properties, Inc. v. Arden-Mayfair, Inc.*, 115 Wn.2d 364, 369, 798 P.2d 799 (1990). Although the trial court denominated its credibility determination a "Conclusion of Law," we review findings of fact denominated as conclusions of law as findings of fact. *Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986). Furthermore, the trial court is in the best position to evaluate the credibility of witnesses. *Fisher*, 115 Wn.2d at 369. We will not substitute our judgment and intrude upon a trial court's credibility findings. *Fisher*, 115 Wn.2d at 369-70.

upon inapposite federal court opinions[14] holding that only

---

[14]None of the cases cited by the State involved an unexplained delay causing the loss of juvenile court jurisdiction, which is presumed prejudicial in Washington. *See United States v. Crouch*, 84 F.3d 1497 (5th Cir. 1996) (bank fraud case: setting out rule that due process violation requires substantial, actual prejudice and either intentional government purpose to gain tactical advantage or some other bad faith purpose; rejecting the balancing of interests test; holding that there was no evidence of substantial, actual prejudice; dissent, rejecting majority's ruling that bad faith was requisite to preindictment delay challenge), *cert. denied*, 117 S. Ct. 736 (1997); *United States v. Engstrom*, 965 F.2d 836, 839 (10th Cir. 1992) (misapplication of bank funds case: no due process violation for four-year preindictment delay caused by plea negotiations and heavy docket that was neither prejudicial nor purposeful); *United States v. Mills*, 925 F.2d 455, 464 (D.C. Cir. 1991) (drug case: no Fifth Amendment due process violation for preindictment delay due to transfer of all drug cases from D.C. court to federal court when no specific prejudice argued), *aff'd en banc*, 964 F.2d 1186, 1188 n.3 (D.C. Cir.) (affirming that there was no Fifth Amendment due process violation, remanding for determination of whether Sixth Amendment speedy trial rights were violated), *cert. denied*, 506 U.S. 977 (1992); *United States v. Benson*, 846 F.2d 1338, 1343 (11th Cir. 1988) (drug conspiracy case: no Fifth Amendment due process violation for eight-year preindictment delay caused by ongoing conspiracy investigation when minimal prejudice was not tactical and did not outweigh investigative needs); *United States v. Sims*, 779 F.2d 16, 17 (8th Cir. 1985) (firearm violation case: no Fifth Amendment "speedy trial" violation where there was no prejudice shown, government delay was for investigation, and delay was not intentional); *United States v. Sebetich*, 776 F.2d 412, 430 (3d Cir. 1985) (robbery case: Sixth Amendment speedy trial guarantee not applicable to preindictment delay, Fifth Amendment violation only when delay intentional and prejudicial, mix-up between federal and state authorities was not proven to be intentional), *cert. denied*, 484 U.S. 1017 (1988); *United States v. Duncan*, 763 F.2d 220, 222 (6th Cir. 1985) (drug possession case: no due process violation unless both prejudice and intent proven, *no prejudice shown from loss of potentially favorable witness*); *United States v. Marler*, 756 F.2d 206, 213 (1st Cir. 1985) (civil rights case: no due process violation because no proof of actual prejudice or government intent to gain tactical advantage by delay). However, several circuits have rendered conflicting decisions. *Compare United States v. Burns*, 990 F.2d 1426, 1435 (4th Cir.) (drug importation case: defendant claimed that government delayed to gain tactical advantage, which would have been due process violation, but deferred to trial court determination that government exhibited good faith throughout investigations), *cert. denied*, 508 U.S. 967 (1993), *with Howell v. Barker*, 904 F.2d 889, 895 (4th Cir.) (habeas corpus petition challenging 27-month delay between issuance and service of arrest warrant: State conceded prejudice and negligence, State provided no justification for delay, thus on balance court found no valid justification for delay), *cert. denied*, 498 U.S. 1016 (1990); *compare United States v. Anagnostou*, 974 F.2d 939, 942-43 (7th Cir. 1992) (restaurant bombing/insurance fraud case: due process only violated for egregious preindictment delay that is both prejudicial and designed to gain tactical advantage or other impermissible purpose; no violation where absent witness was not prejudicial and conceded no government bad faith), *cert. denied*, 507 U.S. 1050 (1993), *with United States v. King*, 593 F.2d 269, 272 (7th Cir. 1979) (extortion case: once prejudice shown, burden shifts to State to show why delay necessary, remanded to determine if there was actual prejudice); *compare United States v. Townley*, 665 F.2d 579, 582 (5th Cir.) (mail fraud case: prejudice and negligent delay may

intentional delay violates due process, and correctly notes that our Supreme Court originally relied upon subsequently repudiated authority in "suggest[ing]" that negligence can violate due process. *See Calderon*, 102 Wn.2d at 353 (citing *State v. Avery*, 259 N.W.2d 63 (1977), *abrogated by State v. Montgomery*, 436 N.W.2d 303 (1989)). Nonetheless, our Supreme Court has repeatedly stated that negligent delay may be sufficient to violate due process since *Calderon*. *Warner*, 125 Wn.2d at 890; *Dixon*, 114 Wn.2d at 865; *Lidge*, 111 Wn.2d at 848; *Alvin*, 109 Wn.2d at 604. This court is bound to follow the decisions of our state Supreme Court. *See State v. Berlin*, 80 Wn. App. 734, 740, 911 P.2d 414 (1996) (citing *State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227 (1984)).[15]

Cases addressing negligent delay do not specifically address whether negligence is sufficient to dismiss a case. Rather, those courts have resolved the issue by balancing the interests of the defendants and the State under the third step of the test. In *Schifferl*, another division of this court addressed the State's negligent failure to charge resulting in the loss of juvenile court jurisdiction where the police failed to attach a required " 'referral form.' " *Schifferl*, 51 Wn. App. at 269-70. The *Schifferl* court held such negligent inadvertence was insufficient as a matter

violate due process, however, court found that defendant was not substantially prejudiced by the delay), *cert. denied*, 456 U.S. 1010 (1982), *with United States v. Durnin*, 632 F.2d 1297, 1299 (5th Cir. 1980) (embezzlement case: due process violation requires both substantial prejudice and improper prosecutorial motive; no due process violation when delay was result of good faith effort to obtain evidence of guilt beyond a reasonable doubt); *see also Pharm v. Hatcher*, 984 F.2d 783, 786-87 (7th Cir. 1993) (habeas corpus petition from child sexual assault conviction: no Fourteenth Amendment due process violation because specific prejudice not shown, noting, but not resolving, conflict between *Anagnostou* and *King*), *cert. denied*, 114 S. Ct. 125 (1993); *Dickerson v. Louisiana*, 816 F.2d 220, 229 n.16 (5th Cir.) (pretrial habeas corpus petition denied: noting, but not resolving, conflict between *Townley* and *Durnin*), *cert. denied*, 484 U.S. 956 (1987). One circuit has also noted that *Lovasco* suggests that prejudicial delay caused by the State's reckless disregard for the circumstances may violate due process. *United States v. Walker*, 601 F.2d 1051, 1056 (9th Cir. 1979).

[15]While our decision in this case is not based upon our state constitution, we must follow the three-step test our Supreme Court fashioned from *Lovasco* to apply to due process challenges for preaccusatorial delay depriving a defendant of juvenile court jurisdiction because there is no binding federal authority to the contrary.

of law to vitiate the State's interest in administering justice, which outweighed the defendant's interest in maintaining juvenile court jurisdiction. *Schifferl*, 51 Wn. App. at 273-74.

In the present case, however, the trial court determined that both Frazier and the State have strong interests in the process of administering justice so that fundamental conceptions of fairness are properly served. The State has no interest in processing the accused in an unjustifiably negligent fashion. Moreover, the State's interests in fairly administering justice can be served only when such fairness is maintained. This reasoning is sound. The trial court did not err in concluding that the delay was unjustified.

The trial court correctly determined that Frazier was prejudiced, that the State provided no reason for the delay, and that this negligent delay was unjustified; therefore, it did not need to reach the third step and balance the interests of the State and Frazier. *Warner*, 125 Wn.2d at 889. Nevertheless, the trial court did balance these interests and concluded that Frazier's interests outweighed those of the State.

In addressing this third step, several courts have noted that an important factor in balancing the State's and defendant's interests is the likelihood of the juvenile court declining jurisdiction. *See Alvin*, 109 Wn.2d at 606; *Calderon*, 102 Wn.2d at 352-53; *Schifferl*, 51 Wn. App. at 273. Here, Frazier elicited testimony from the prosecutors that the juvenile court normally does not decline jurisdiction over property crimes, such as residential burglary.[16]

The trial court weighed the State's interests in prosecuting crime, in ensuring a just society, and in protecting people's due process rights against the prejudice to Frazier of the longer period of incarceration in the state

---

[16]Asai testified that she did not usually ask for declination in property crimes. Kelly testified that a burglary would probably not be declined unless it was particularly egregious. Wolf testified that he was not aware of any "decline[s]" for property crimes.

prison system.[17] The trial court concluded that the State had not met its responsibility to provide Frazier with "full protection of the law," and then dismissed the prosecution. We hold that the trial court properly weighed the evidence, determined the credibility of the witnesses, and determined that prosecution of this case is contrary to fundamental concepts of justice.

The State also argues that the prosecutor must have discretion in charging, noting that the report contained insufficient information prior to April 1993. This ignores the prosecutor's admitted failure even to look at the report during the eight weeks before Frazier's birthday. While conflicting evidence was presented regarding the reasonableness of this delay, the trier of fact found the State failed to provide any credible explanation justifying either of the two eight-week delays. The trial court did not interfere with prosecutorial discretion by simply requiring some reasoned, credible explanation for the prosecutor's failure to charge in a timely manner.[18]

### B. Sanctions

The State also appeals the trial court's denial of sanctions against defense counsel for refusing to agree to a continuance. The State argues that Frazier's collateral estoppel motion was not timely because it was not served five days before the hearing, in violation of CrR 8.1, which incorporates the CR 6(d) five-day requirement. The State asserts that, in order to deter future harassment, the trial court should have sanctioned counsel for this untimely

---

[17]The State does not challenge the trial court's conclusions regarding the interests that had to be balanced here.

[18]In Frazier's responsive brief, he analogizes dismissal for preaccusatorial delay to dismissal for misconduct pursuant to CrR 8.3(b), "in the furtherance of justice." The Supreme Court has held that simple mismanagement is a sufficient basis to dismiss a case under CrR 8.3(b). *State v. Blackwell*, 120 Wn.2d 822, 831, 845 P.2d 1017 (1993)(holding that failure to provide materials requested in discovery did not amount to mismanagement)(additional citation omitted). Because we hold that preaccusatorial delay requires dismissal, we do not address this issue.

motion. The State also argues that CR 11 sanctions should have been granted. *See* CrR 8.2, incorporating CR 7(b), which in turn incorporates CR 11. Additionally, the State argues that sanctions may be granted for violations of the court rules.

Defense counsel counters that his initial reluctance to agree to another continuance arose from his concern for its impact on Frazier, not as the State asserts, from malice against the State for prosecuting Frazier. The trial court acknowledged that it was difficult to understand defense counsel's behavior in initially refusing a continuance but then agreeing to one late Sunday evening. Nonetheless, the court declined to impose sanctions.

A trial court's decision regarding CR 11 sanctions is reviewed for an abuse of discretion. *Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 339, 858 P.2d 1054 (1993)(additional citation omitted). Abuse of discretion occurs when an order is manifestly unreasonable or based upon untenable grounds. *Fisons*, 122 Wn.2d at 339 (additional citation omitted). We find no grounds to overrule the trial court's reasonable exercise of discretion here.

Affirmed.

BRIDGEWATER and TURNER, JJ., concur.